STAFFORD CO. v. COLDWELL–GILDARD CO. et al.

(Circuit Court of Appeals, First Circuit.    January 30, 1913.)

No. 994.

1. PATENTS (§ 136*)—REISSUES—AUTHORITY TO GRANT.

To authorize a reissue patent under Rev. St. § 4916 (U. S. Comp. St. 1901, p. 3393), there must be clear proof that the error which renders the original patent inoperative or invalid arose by "inadvertence, accident or mistake," and that the party asking for relief acquires no more than he was originally entitled to; and what is called for by the words "same invention" in the statute cannot be gathered from mere inferences or suggestions with reference to what the patentee might or might not have conceived.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 198½; Dec. Dig. § 136.*]

2. PATENTS (§ 328*)—VALIDITY OF REISSUE—STOP-MOTION FOR LOOMS.

The Coldwell & Gildard reissue patent, No. 11,923 (original No. 637,-234), for a warp stop-motion for looms, in which claims 19 to 30 inclusive are new, is void as to claim 19 and all subsequent claims which are substantially broader .than claim 23 as not for the same invention . disclosed in the original patent.

Appeal from the District Court of the United States for the District of Massachusetts; Arthur L. Brown, Judge.

Suit in equity by Coldwell-Gildard Company and others against the Stafford Company. Decree for complainants, and defendant appeals. Reversed.

Wilmarth H. Thurston, of Providence, R. I., for appellant.

William K. Richardson, of Boston, Mass. (J. Lewis Stackpole, of Boston, Mass., on the brief), for appellees.

Before COLT, PUTNAM, and DODGE, Circuit Judges.

PUTNAM, Circuit Judge. This case, in our opinion, turns on the validity of a reissued patent to Coldwell & Gildard, dated July 30, 1901, No. 11,923, entitled "Warp Stop-Motion for Looms." The reissued patent contained 30 claims, of which claims 19 to 30, each inclusive, were brought in on the reissue, and are the only claims we need especially trouble ourselves about.

The patent is for a warp stop-motion for looms. Original claims 3 to 18, each inclusive, related to a combination of a drop-bar with other elements, constituting a warp stop-motion for looms; but claims 1 and 2 related only to a peculiar form of a drop-bar. The claims introduced in the reissue relate to a subject-matter different from any of the original claims. They do not cover stop-motion combinations, and they are not all limited to a particular kind of drop-bar. They concern the location of the drop-bars in whatever form they may be, and the capability of free movement with reference to the avoiding of chafing of the threads.

In the original patent there was nothing whatever of this, unless the following expression in the specification, namely: .

"It will also be noticed that by the relative location of the lease-rods with the circuit-rods a warp-thread can only chafe against one of the adjacent

drop-bars instead of that at each side, as would be the case if the lease-rods were located in advance of the circuit-rods."

In lieu of that, we find in the specification of the reissued patent the following:

"It will also be noticed that, owing to the location of the lease-rods with reference to the drop-bars and to the shape which we give these drop-bars, each drop-bar is entirely free from contact with the warp-threads on either side of its own warp-thread, and can only come in contact with them (if at all) by jumping upward while the loom is in motion. By this arrangement we prevent the injurious chafing of the warp-threads which takes place where each thread passes by the drop-bars of the two adjacent threads, and is normally in contact with one or both of these drop-bars."

[1] It is not necessary here to go into any lengthy examination of the authorities, because the law is too manifest to need multiplication of restatements. The statute (Rev. St. § 4916 [U. S. Comp. St. 1901, p. 3393]) provides that "whenever any patent is inoperative or invalid by reason of a defective or insufficient specification," "if the error has arisen by inadvertence, accident or mistake," "the Commissioner shall" "cause a new patent for the same invention, to be issued." Two leading and imperative requirements stand in the path of a reissue: First, that the error must have arisen "by inadvertence, accident or mistake"; and, second, that the new patent is to be for the "same invention." Consequently, it must appear, in some manner provided by law, that the invention for which the reissue is granted was in the contemplation of the patentee at the outset, and that he failed to acquire it by reason of "inadvertence, accident or mistake."

Starting with these propositions, the rules which govern the Commissioner and the courts are those applied by the fundamental principles of equity, that in order to relieve against "inadvertence, accident or mistake" there must be clear and positive proof that there was such "inadvertence, accident or mistake," and that the party asking for relief acquires no more than he was originally entitled to. The burden of maintaining the facts to which these requirements relate is of a character that requires clear and positive proof, in harmony with the universal rules of equity not to disturb the existing status except by proof of that character. No mere inferences can take the place of such proof. Ordinarily, what is called for by the words "same invention" should appear in some way on the face of the original patent, and it cannot be gathered from mere inferences or suggestions with reference to what the patentee might or might not have conceived.

[2] Of course, in many respects, the ruling of the Commissioner in authorizing a reissue, like all other departmental rulings, may be of special weight and force, and sometimes quite conclusive. This applies not to questions of law appearing on the face of the record, but to questions of fact, and sometimes to mixed questions of law and fact, especially where the real issue is the application of doubtful or disputed facts to the law. Also it must be remembered that, with reference to the topic of "inadvertence, accident or mistake," equity gives great effect in neutralizing the errors of scriveners where the scrivener departs from what was clearly the intention of the parties. In the petition for the reissue, and the deposition which is a part

thereof, the patentees represented to the Commissioner that they had intrusted the matter of an application for letters patent to their solicitor, "to whom as they supposed they had sufficiently explained all the features of the machine which they desired to patent, including the improvements for preventing the chafing of the warp-threads, which," as they said, "formed an important part of their invention, and which they supposed he had properly described and claimed"; and that they had, however, "recently discovered that, while the specification correctly describes the manner in which the warp-threads are passed over and under the lease-rods, and while the drawings correctly show, especially in Fig. 5, the manner in which the chafing of the warp-threads is prevented, the passage in the specification which especially relates to this subject is not clearly or accurately expressed," "and that upon discovering this defect they at once instructed their solicitor to apply for a reissue in their behalf." This undoubtedly, according to the practice of the Patent Office, laid the foundation for an investigation by the Commissioner of the two important questions involved, namely: First, of "inadvertence, accident or mistake"; and, second, of the question of the "same improvement." The question of the "same improvement" is not very satisfactorily answered. However, this was a matter to a certain extent within the jurisdiction of the Commissioner, and so far within his jurisdiction, that we think, upon the entire state of facts presented in this record, we should follow his ruling thereon. The other question, that of "inadvertence, accident, or mistake," was a pure question of fact, and on this record was clearly within his jurisdiction, as no evidence was anywhere offered contravening the patentees' propositions in reference thereto.

In view, therefore, of the Commissioner's decision, we find that the reissue was valid, at least to a certain extent. This, however, is far from concluding the difficulties of the case.

There are substantial differences between the various claims numbered from 19 to the end. Claim 19 is a broad claim, and one which ought not be sustained except after careful consideration. It would prohibit almost any form of arrangement of drop-bars by which chafing would be avoided; while claim 23, which we were told at bar substantially represents in detail the method of the patentees, is extremely limited. That is as follows:

"23. A loom, having, in combination, means which divide the warp-threads into intersecting planes, guides located beneath the warp-threads on opposite sides of the intersection between said planes and out of vertical alinement with said dividing means, and a drop-bar for each warp-thread, said drop-bars being arranged in banks positioned respectively by said guides, and suspended respectively from said warp-threads on opposite sides of said intersection, each drop-bar terminating at its upper end below the plane of the warp-threads which is intersected by the thread from which said drop-bar is suspended, whereby each drop-bar comes in contact only with the warp-thread which supports it, and is free to move vertically."

Nevertheless, the decree went against the respondent on all the new claims en masse. It becomes necessary, therefore, to consider whether the reissue is valid for anything beyond claims of the character of

No. 23. The petition for reissue, to which we have referred, uses the words:

"While this specification correctly describes the manner in which the warp-threads are passed over and under the lease-rods; and while the drawings correctly show, especially in Fig. 5, the manner in which the chafing of the warp-threads is prevented," etc.

This prima facie bars the patentees from claiming any improvement beyond that specifically described in Fig. 5. Moreover, the complainants, describing the reissue, now say:

"It corrected the inaccurate paragraph as to chafing, stating what was plain from the original patent, namely, that in the patentees' arrangement the drop-bar would be free from contact with the warp-threads of each of the adjacent drop-bars."

Also they say that "a part of their invention was the subcombination in question shown in the drawings, particularly in Fig. 5." Consequently, the whole goes back to what was thus pointed out by Fig. 5, and the broad claim of No. 19 was beyond anything the Patent Office could lawfully have found to be a part of the patentees' improvement, or consequently to have been omitted by "inadvertence, accident or mistake." Consequently, therefore, the reissue is invalid as to claim 19, and all claims substantially broader than claim 23. It is not within our province to go through all these numerous claims, and sift out the result of our conclusion. Therefore we leave it to the District Court to work out the details of that character.

It must also be remembered that while with reference to all the new claims, Nos. 19 to 30, each inclusive, the question of infringement might be very simple, yet with regard to claims of the character of claim 23, the question of infringement might be of an entirely different character, and the infringement not found. This fact may require special investigation in this particular.

We say nothing herein on the question of anticipation, because with reference to a claim of the nature of claim 23 it would be almost beyond belief that anticipation could be found on this record.

The decree of the District Court is reversed, and the case is remanded to that court for proceedings in accordance with our opinion passed down the 30th day of January, 1913; and the appellant recovers its costs of appeal.