NORTHROP et al. v. DRAPER CO.

(Circuit Court of Appeals, First Circuit. January 9, 1917.)

No. 1236.

1. PATENTS ⚙137—CONSTRUCTION AND OPERATION OF ASSIGNMENT—RIGHT OF ASSIGNOR TO REISSUE.

An assignee of the Northrop patentee, No. 987,817, for a misthreading device for looms, *held* entitled to a specific enforcement of the implied covenant of the patentee, as assignor, to execute an application for a reissue on the ground that through inadvertence the language of the specification and certain of the claims misstated the mode of operation of a certain feature of the device intended to be covered by the patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 199.]

2. PATENTS ⚙137—ASSIGNMENT—CONSTRUCTION—IMPLIED COVENANT TO APPLY FOR REISSUE.

An assignment of an application for a patent to the assignee, his heirs, executors, administrators, and assigns, with the patent to be issued thereon and any right to a reissue, carries with it an implied covenant, which runs with the grant, that the assignor will make application for a reissue in case the patent manifests an intention to claim a feature disclosed therein, but which it fails to state accurately in a claim; and such implied covenant is not defeated as to subsequent assignees by a further covenant, personal to the first assignee, and which does not run with the grant, to make such an application if the assignee shall deem it necessary.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 199.]

3. WORDS AND PHRASES—"HOPPER MISTHREAD"—"REAL MISTHREAD."

As applied to looms, a "hopper misthread" is one that occurs following the act of replenishment, by the thread becoming broken at the moment of transfer or prior to the arrival of the shuttle in the box at the side of the loom remote from the hopper. A "real misthread" occurs after the shuttle is replenished by a new bobbin, a laying of filling in the shed on the first pick of the shuttle, and failure of filling on the return pick, due to

breakage. In the case of a hopper misthread no filling is laid on the first pick, or on the return pick of the shuttle; while in the case of a real misthread filling is laid on the first pick, but not on the return pick, and, as the shuttle, under such circumstances is not replenished when it reaches the hopper side of the loom, no filling is laid on the subsequent picks of the shuttle preceding replenishment.

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Suit in equity by the Draper Company against Jonas Northrop and another. Decree for complainant, and defendants appeal. Affirmed.

Horace Van Everen, of Boston, Mass., for appellants.

W. K. Richardson, of Boston, Mass., for appellee.

Before BINGHAM, Circuit Judge, and HALE and MORTON, District Judges.

BINGHAM, Circuit Judge. This is a bill for specific performance of an alleged agreement, wherein it is sought to have the defendant Northrop execute an application for a reissue patent covering an invention made by him and now owned by the plaintiff, and to have the defendant Draper restrained from in any way interfering with Northrop's taking such action as may be necessary to obtain the reissue. The case is here on an appeal by the defendants from a decree of the District Court ordering Northrop to execute the application.

[1] It appears that on March 28, 1911, United States letters patent No. 987,817 were issued to defendant Draper, assignee of Northrop, on an application filed by the latter July 12, 1910, for an invention for misthreading devices for looms, and that on September 8, 1911, the defendant Draper assigned the invention and patent to the plaintiff. In February, 1915, the plaintiff discovered that the language employed in the specification of the patent (page 3, line 86) misstated the mode of operation of a certain feature of the device, and that a like misstatement was incorporated in claim 8 (lines 103 and 104, page 4), rendering it defective. It was also discovered that in claim 6 the sequence of events upon which, in the operation of the device, it was stated in the claim that the loom would stop, was defective, in that the loom would not stop upon such sequence. Shortly after discovering these defects the plaintiff sent an application for reissue, embodying the desired corrections, to the defendant Draper, with a request that he present it to Northrop for his signature. Draper later returned the application unexecuted, with the statement:

"That if the claims were amended as proposed by the reissue they would be broader than the invention * * * which the application for the original patent was intended to cover."

On this appeal the defendants concede that the defects complained of in the specification (line 86, page 3) and in claim 8 (lines 103 and 104, page 4) are obvious defects, and the desired corrections should be made, as they may properly be predicated upon the invention intended to be patented in the original patent. The controversy, therefore, is limited to the correction which the plaintiff asks to have made in claim 6. The defendants' contention is that the correction sought as to claim

6, if allowed, would result in introducing into the reissue patent a claim for a different invention from the one patented or intended to be patented in the original patent, and would also result in a broadened reissue.

The Revised Statutes of the United States provide:

"Sec. 4916. Whenever any patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the Commissioner shall, on the surrender of such a patent and the payment of the duty required by law, cause a new patent for the *same invention*, and in accordance with the corrected specification, to be issued to the patentee, or, in the case of his death or of an assignment of the whole or any undivided part of the original patent, then to his executors, administrators, or assigns, for the unexpired part of the term of the original patent. * * * The specifications and claim in every such case shall be subject to revision and restriction in the same manner as original applications are;  * * *  but no new matter shall be introduced into the specification, nor in case of a machine patent shall the model or drawings be amended, except each by the other." Comp. St. 1913, § 9461.

In Stafford Company v. Coldwell-Gildard Co., 202 Fed. 744, 121 C. C. A. 110, Judge Putnam, in discussing the above statute, said:

"Two leading and imperative requirements stand in the path of a reissue: First, that the error must have arisen 'by inadvertence, accident or mistake'; and, second, that the new patent is to be for the 'same invention.' Consequently, it must appear, in some manner provided by law, that the invention for which the reissue is granted was in the contemplation of the patentee at the outset, and that he failed to acquire it by reason of 'inadvertence, accident or mistake.'

"Starting with these propositions, the rules which govern the commissioner and the courts are those applied by the fundamental principles of equity, that, in order to relieve against 'inadvertence, accident or mistake,' there must be clear and positive proof that there was such 'inadvertence, accident or mistake,' and that the party asking for relief acquires no more than he was originally entitled to. The burden of maintaining the facts to which these requirements relate is of a character that requires clear and positive proof, in harmony with the universal rules of equity not to disturb the existing status except by proof of that character. No mere inferences can take the place of such proof. Ordinarily, what is called for by the words 'same invention' should appear in some way on the face of the original patent, and it cannot be gathered from mere inferences or suggestions with reference to what the patentee might or might not have conceived."

The first question, therefore, is: What was the invention intended to be covered by the original patent as manifested by the terms employed in that instrument?

The patent is entitled "An improvement in misthreading devices," and relates particularly to looms of the filling replenishing type, wherein at desired times a fresh supply of filling is automatically furnished. In looms of this character the shuttle is thrown from the hopper side of the loom through the shed, across the warp, to the opposite side of the loom. Following this flight of the shuttle the lay beats up, pressing the thread just laid against the fell of the cloth, and is at once withdrawn. The shuttle then makes its return flight through the shed to the hopper side of the loom, and is then followed by another beat of the lay, and so on. The first pick of the shuttle and the succeeding

beat of the lay are known respectively, as the "detecting pick" and the "detecting beat," and the return pick of the shuttle and the following beat of the lay are known as the "nondetecting pick" and the "nondetecting beat." When the filling becomes exhausted, or breaks, a new bobbin is transferred from the hopper to the shuttle to replenish the filling, and this is done without stopping the loom. The free end of the thread of each bobbin is attached to the hopper, so that, when the shuttle containing the bobbin is thrown through the shed, the thread is left in the shed to be beaten up by the lay.

[3] In these looms certain defects of operation are liable to occur when replenishment takes place. They are spoken of in the patent as hopper misthreads and a real misthread. A hopper misthread is one that occurs following the act of replenishment by the thread becoming broken at the moment of transfer or prior to the arrival of the shuttle in the box at the side of the loom remote from the hopper. A real misthread occurs after the shuttle is replenished by a new bobbin, a laying of filling in the shed on the first pick of the shuttle, and failure of filling on the return pick due to breakage. This occurrence usually takes place because the shuttle is not properly threaded following replenishment. It will be noted that in the case of a hopper misthread no filling is laid either on the first pick or the return pick of the shuttle, while in the case of a real misthread filling is laid on the first pick, but not on the return pick, and, as the shuttle, under such circumstances, is not replenished when it reaches the hopper side of the loom, no filling is laid on the subsequent picks of the shuttle preceding replenishment.

Prior to the patent in suit devices had been made to stop the loom on two hopper misthreads in succession, but in such devices, should filling be laid once on a detecting pick following a hopper misthread, the stop mechanism would return to its normal or initial position, so that, to effect stoppage of the loom thereafter, two successive hopper misthreads were required, with the result that loom stoppage for a real misthread was precluded, and the loom would continue to operate until the hopper became exhausted.

In the specification, where the inventor first considers the object to be accomplished by his invention, he states it to be:

"To provide means whereby, if filling is absent on two alternate detecting beats, the loom will stop, regardless of whether filling is present or not on the intermediate beat."

This is only another way of saying that, if filling is absent on two successive hopper misthreads following replenishment due to a first absence of filling, or if a real misthread occurs following replenishment due to a first absence of filling, the loom will stop, and also for saying that, if filling is absent on a first detecting beat, causing replenishment, present or absent on the next detecting beat, and absent on the next detecting beat, the loom will stop, and manifests an intention to disclose means for loom stoppage upon two successive hopper misthreads and also upon a real misthread. All three statements are but different methods of saying the same thing.

There is also one other place in the specification where the inventor states the object of his invention as follows:

"Thus in the present invention it will be noted that upon the occurrence of a double hopper misthread the loom will stop, and will also be stopped by the occurrence of a real misthread; in other words, the loom will stop if on two alternate detecting beats the filling be absent, that is, if it be absent on one detecting beat, present on the next detecting beat, and absent on the next detecting beat the loom will stop."

In the foregoing sentence it is apparent that the inventor was undertaking to state the object of his invention in three ways, each of which is the equivalent of the other two. He there states as his first proposition that the loom will stop "upon the occurrence of a double hopper misthread," and also "by the occurrence of a real misthread"; and, in prefacing the second and third clauses of the sentence by the phrases "in other words" and "that is," he indicates that he was undertaking to restate in different language in each clause the same thing which he had previously stated in the first clause. There can be no question but that the second clause states the exact equivalent of the first clause; and the third clause, although clearly intended to state the equivalent of the two preceding clauses, is manifestly defective and incomplete, for it fails to employ language conveying the equivalent idea of loom stoppage on the occurrence of a double hopper misthread. To have carried out the idea intended to be conveyed, the third clause should have read:

"That is, if it be absent on one detecting beat, present *or not* on the next detecting beat, and absent on the next detecting beat the loom will stop."

Its meaning, however, is clear when read in connection with what precedes it.

We have also examined carefully the remaining provisions of the specification, including the drawings, and, in particular, the portions providing means and describing their workings for accomplishing loom stoppage, and find that they are all based upon the idea of providing means for loom stoppage upon the occurrence of either of two sequences—a double hopper misthread or a real misthread—and that no means are disclosed in the specification for loom stoppage upon the occurrence of a sequence consisting of a real misthread alone.

Now, as to the claims of the patent: An examination shows that some of them claim means for loom stoppage in general terms, while others set forth the particular means by which this object is to be accomplished. But in every one of them, apart from claim 6, means are claimed for loom stoppage upon the occurrence of two sequences consisting, one of a double hopper misthread and the other of a real misthread, and not upon the occurrence of a single sequence consisting of a real misthread alone.

Thus far it is clear, both as to specification and claims, that the inventor has not disclosed an intention of providing means for loom stoppage upon the occurrence of a sequence constituting a real misthread alone. It remains, however, for us to consider claim 6. This claim reads:

"In a loom of the character described, the combination of means for detecting the presence or absence of filling in the shed, filling replenishing controlling means adapted to be actuated when filling is absent on a detecting beat, and means for stopping the loom when the filling is absent on a detecting beat *following* replenishment, present on the next detecting beat, and absent on the next detecting beat."

It is conceded that the claim purports to state that the loom will stop on the occurrence of the following sequence: Absence (replenishment), absence (replenishment), presence, absence; that it calls for mechanism for loom stoppage on the occurrence of a single sequence composed of a hopper misthread and a real misthread; and that the specification discloses no means by which the loom will stop upon that sequence.

The plaintiff desires to amend the claim by striking out the word "following," and inserting in its stead the word "causing," so that the portion of the claim material for our consideration would read:

"Means for stopping the loom when the filling is absent on a detecting beat *causing* replenishment, present on the next detecting beat, and absent on the next detecting beat."

It is thus seen that the unamended claim calls for means for loom stoppage upon the sequence of a hopper misthread and a real misthread, and that the specification does not provide means for loom stoppage, either upon the sequence of a hopper misthread and a real misthread, or upon that of a real misthread alone.

While it is true that the specification does not disclose means for loom stoppage upon a real misthread alone, it is equally true that amended claim 6 does not call for means which will function on such a misthread alone, but for means that will function on a real misthread, even though they will also function upon a double hopper misthread, and that, to this extent, the intention of the inventor as to this feature of his invention is manifest: (1) Because it is not covered by the other claims of the patent; and (2) because claim 6, as originally drawn, is wholly inoperative and could have been intended to cover no other feature of the invention. In other words, although the means disclosed in the specification function in two ways, the inventor is not precluded from having a claim for those means based upon their functioning in one of the ways disclosed, and is entitled to have it, inasmuch as his intention to claim it is disclosed in the patent.

Whether a device disclosing means that would operate on a real misthread alone would infringe claim 6 as amended is of little consequence in this proceeding, as we think the patent clearly discloses an intention on the part of the inventor to claim means that will function on a real misthread and produce loom stoppage, although they may also function on a double hopper misthread, and that the use in the claim of the word "following," instead of "causing," was, as found by the court below, due to "inadvertence, accident or mistake" on the part of the solicitor.

We do not regard the rule—that a reissue which broadens a patent cannot be had after two years from the granting of the patent—as ap-

plicable to the facts in this case: (1) Because amended claim 6 is not broader than original claim 6, as each calls for a single sequence of misthreads; and (2) because amended claim 6, as understood, does not introduce a distinct invention from that shown in the patent, but covers means disclosed in the specification which the inventor intended to claim in original claim 6.

As to the defendants' contention that it was the duty of the plaintiff, immediately after purchasing the patent, to have caused an examination to be made for the purpose of ascertaining whether claim 6 covered the scope of the intended invention and the detection of any error that might exist therein, we think it sufficient to say that the evidence discloses that, shortly after the plaintiff purchased the patent, it caused its experts to make an examination of it with this object in view, and that their examination failed to disclose the defects now complained of, and that they were not discovered until February, 1915, when the plaintiff's expert, on examining a device which the defendants had put upon the market, discovered that it embodied means causing loom stoppage on a real misthread, and, knowing that this was one of the fundamental features of the patent in question, again made an examination of the patent and discovered the defects here complained of. This evidence, instead of tending to show a failure on the plaintiff's part to take reasonable steps for the ascertainment of any defects that might exist in the patent, discloses that it took such steps as it, in the exercise of reasonable care and prudence, was called upon to take, and that the failure to discover the defect in claim 6 was due to no fault on its part.

Furthermore, we do not think that the defendants are in a position to assert rights due to action taken by them in reliance upon the plaintiff's conduct in failing at an earlier date to ascertain the defects in its patent and apply for a reissue. The defendants do not stand in the shoes of a person acting in good faith in reliance on plaintiff's conduct; for defendant Northrop was the inventor of the patent, and defendant Draper the party to whom it was issued, and the former, by reason of his knowledge of the scope of the invention, would be far more reprehensible for failure to ascertain defects in the claim than would be the plaintiff. Besides this, in their answer, the defendants admit that in 1913 their attention was "called to the fact that claim 6 was not predicable upon the structure illustrated and described in the specification of the patent," which information was apparently acquired prior to their taking action in the way of producing and putting upon the market devices providing for loom stoppage upon a real misthread. The defendants, therefore, in 1913, and probably at an earlier date, knew that claim 6 was defective, in that it did not state what it was intended to claim.

[2] As we regard the remaining questions raised on this appeal rightly determined in the court below, it is not our purpose to again review any of them, except the one as to whether the defendant Northrop is under an obligation to the plaintiff, express or implied, to make application for a reissue. The assignment was to Draper, his heirs,

executors, administrators, and assigns, and was of the invention disclosed in the application, the patent to be issued thereon, and any right to a reissue. If Northrop had not inserted an express covenant for further assurance in the assignment, it cannot be doubted that a covenant would be implied to this extent, at least: That Northrop would make application for reissue in case the patent manifested an intention to claim a feature disclosed therein, but which it failed to state accurately in a claim. The implied covenant would be for the benefit of the grant, and the grant being to Draper and his assigns, would inure to the plaintiff. The contention is made that the express covenant is a restricted covenant; that is, that it confers rights upon Draper less than an implied covenant would confer, and that, because of this, no covenant can be implied in favor of the grant and, being personal to Draper, will not inure to the plaintiff. But we do not regard the express covenant as of less scope than the one that would be implied. It imposes, rather, a greater obligation, in that it requires Northrop to apply for a reissue if Draper deems it necessary, and under circumstances to which the implied covenant would not extend. The rights conferred by the express covenant beyond what would be implied, being personal to Draper, would not run with the grant; but, in so far as the rights conferred are only what would be contained in the implied covenant, it is evident it was intended they should inure to an assignee; otherwise, the full enjoyment of the grant could not be had by Draper's assigns, which it was expressly stipulated they should possess.

It having been determined that the plaintiff is entitled to a reissue for the purpose of correcting claim 6, and it being conceded by defendants that the plaintiff is entitled to the corrections desired in the specification (line 86, page 3) and in claim 8 (lines 103, 104, page 4), the decree of the District Court must be affirmed.

The decree of the District Court is affirmed, with costs to the appellee.