## STANDARD MAILING MACHINES CO. v. DITTO, Inc.

### No. 3364.

Circuit Court of Appeals, First Circuit.

Dec. 28, 1938.

George P. Dike, of Boston, Mass. (Cedric W. Porter, George P. Towle, Jr., and Dike, Calver & Gray, all of Boston, Mass., on the brief), for appellant.

Max W. Zabel, of Chicago, Ill. (I. U. Townsend, Jr., of Boston, Mass., and Arthur W. Carlson, of Chicago, Ill., on the brief), for appellee.

Before BINGHAM and WILSON, Circuit Judges, and McLELLAN, District Judge.

BINGHAM, Circuit Judge.

This is an equity suit brought in the federal District Court for Massachusetts by the Standard Mailing Machines Company against Ditto, Inc., for alleged infringement of United States Patent No. 19,951, issued to Frederick W. Storck April 28, 1936; it being a reissue of a prior patent (No. 1,-964,933) issued to said Storck July 3, 1934, on an application filed July 21, 1930. The application for reissue was filed December 10, 1935.

The District Court held claims 3 and 8 invalid for want of invention, and that claims 19, 20, 21, 22, 29, 30, 32, 34, and 40 were valid but, in view of the file contents of the application for the original patent

(1,964,933), they should be narrowed in scope and thus narrowed, were not infringed. A decree having been entered accordingly, the plaintiff appealed.

The questions here involved are (1) whether claims 3 and 8 of the reissue patent are valid and, if valid, infringed, and (2) whether the remaining claims are infringed by the defendant's machine (Exhibit 4), which question involves a subsidiary one, namely, the scope to be given to the second group of claims in view of the file contents and the prior art. No question is raised as to the plaintiff's ownership of the original and reissue patents.

The plaintiff's device is known as a wet process machine for printing a substantial number of copies—from two to three hundred—of matter printed on an original or master copy. The master copy is printed in reverse on a typewriter, the carbon sheet being so arranged that it prints on the back of the first sheet instead of on the face of the next one. The carbon sheet is prepared with a special copying ink which is deposited in type form on the master copy. The amount of ink thus deposited is very slight, but it is a measurable amount. A clear sheet that has been moistened is then placed upon and pressed against the master sheet and a slight amount of moisture on the clear sheet is sufficient to soften the ink and produce a clear copy.

This wet process art for producing duplicate copies had existed for about thirty years at the time plaintiff's patentee obtained his patent, but the District Court found that the duplicating machines of that art had not proved successful because no means had been discovered for applying a sufficiently minute and uniform film of moisture over its entire area. If too little moisture was applied to the clear sheet a faint copy resulted; too much moisture made the ink run and washed it off the master sheet so that no more copies could be made. And if the moisture was not uniformly distributed throughout the clear sheet a faint copy resulted where there was too little moisture and a dark or blurred copy where there was too much, and both of these defects might appear on a single sheet.

Storck's machine and mechanism applies a thin, uniform coat of moistening liquid over the entire surface of the sheet. In his machine for accomplishing this result a smooth roller made of glass or metal receives the liquid from a piece of felt or wick and deposits it in a sufficiently minute and uniform amount over the clear sheet on which the printing from the master sheet is to be made. The smooth surface of the roller takes from the felt or wick only so much moisture as will spread on its surface by the surface tension of the liquid and the attraction of the surface of the roller for the liquid. The result is that a very thin coat of moisture is spread over the surface of the roller and by it transferred to the surface of the clear sheet. In Storck's mechanism the wick and roller are the essential elements. Either without the other would not function effectively.

The claims covering this combination of wick or fibrous material and the roller are 19, 20, 21, 22, 29, 30, 32, 34 and 40.

In claim 8 the main feature is the means for intermittently rotating the printing platen or drum in connection with means for rotating the feed rolls in unison with the drum and its pressure roll, for pressing the clear sheet against the master copy. We think that the District Court correctly held that claim 8 was invalid. Intermittent stopping and starting of feed rolls and master drum in unison for positioning a clear sheet to register with the master copy on the drum was old, as was also means for bringing a small amount of moistening fluid to the face of one of the rollers. Ritzerfeld Patent (1927) No. 1,-645,930. Ritzerfeld discloses means for intermittent rotation of the feed rolls and drum in unison and means to bring a small amount of fluid to the face of one of the feed rolls. The claim is not sufficiently limited to escape the prior art.

In claim 3 Storck combined in general terms means for moistening a clear sheet, on which the copy was to be made, with a provision for positioning the advanced end of the clear sheet by the bight of the feed rollers, so that, when that end had passed through the feed rollers, the clear sheet, on being received by the master drum and its pressure roll, would register properly on the master copy on the drum. The main feature of this claim is the positioning of the forward end of the clear sheet by the bight of the feed rolls when they are under tension and are stopped. The means for positioning the clear sheet are the only specific means called for by the claim. All the others are general and are disclosed in the patent above cited to Ritzerfeld. The question as to this

claim, therefore, is whether it is valid by reason of the specific co-operative positioning means which it discloses.

The nearest reference in the prior art that has been called to our attention bearing on this question is the British patent to Albert Eltzbacher of March 23, 1895. The machine of that patent, however, is one for making a copy of a letter, the letter being positioned face down upon the clear sheet upon which the copy is to be made and then passed through feed rolls B and D. The specification of the patent states: "The paper [thus positioned] is brought between the rollers B and D by means of the table K, which terminates shortly before the line of contact of said two rollers." In other words, the bight between the rolls was not a positioning means in that machine. This device was a hand cranked machine. The clear sheet and the superimposed letter were put in registration before entering the rolls, and there was no occasion for further positioning the papers to register; and there was no master copy on a drum in that device to require registration.

The problem confronting the patentee of that invention was not the one which confronted Storck. Storck did not have his master copy and the clear sheet superimposed upon one another before they were passed through the feed rolls. He had only the clear sheet. The master copy was on the periphery of the printing platen or drum, and, to obtain registration of the clear sheet with the master copy, it was essential that the advanced end of the clear sheet should be so positioned that it would register with the master copy on reaching the drum; and, to accomplish this he provided the bight formed by the feed rolls under pressure as his stop mechanism for positioning the clear sheets. In other words, he so arranged the feed rolls that they performed three functions—the positioning, the feeding and the moistening of the clear sheet. The prior art disclosed no such simple and practical mechanism for performing these combined functions. Ritzerfeld's and other prior art patents disclosed stops for positioning the clear sheets, but in those devices, when a certain point in the revolution of the feed rolls and drum was reached, the feed rolls separated, the drum stopped and the clear sheet was moved forward by the operator through the separated rolls and its advanced end was positioned by the stops. This complicated and involved mechanism for positioning the advanced end of a clear sheet fairly represents the state of the art for a substantial number of years and until Storck's invention appeared on the scene. The defendant and others since then have paid tribute to Storck by adopting his method of positioning the clear sheet. Even Ritzerfeld, in his later device, has adopted it. It is evidently one of the substantial elements in the plaintiff's device that has made it a practical machine and enabled it to achieve commercial success. We regard this claim as valid.

■ Claims 32 and 34 may be properly classed with claim 3, so far as they call for the positioning of the advanced end of the clear sheet by the bight of the feed rolls. Claim 32 provides for "rotative feed rollers which engage one another under pressure and form a bight therebetween adapted to receive and position the end of an advanced sheet to be duplicated upon." And claim 34 provides for "positioning, feeding and moistening a clear sheet to be duplicated upon to register and engage under pressure with said master copy sheet, said means comprising opposed feed rollers in engagement with one another under pressure." These claims we regard as valid on account of this novel feature, whether they could be regarded so or not because of some other features which they disclose.

■ The defendant contends that its device does not infringe claim 3 for the reason that it does not have the automatic intermittent stopping and starting features which plaintiff's claim 3 discloses for positioning the clear sheet by the bight of the feed rolls.

For the purposes of this case it is unnecessary to decide whether the defendant's machine infringes claim 3 of the patent, for it is manifest that it infringes claims 32 and 34, irrespective of the automatic stopping feature of claim 3, or whether their scope, due to the character of their moistening means (fibrous material), is or is not limited. The District Judge ruled that claims 32 and 34 and the remaining claims 19, 20, 21, 22, 29, 30 and 40 were valid, but were limited and not infringed by reason of what the patentee's lawyer said in the Patent Office with reference to a claim not here in issue, which the Examiner had suggested, with certain other claims, for an interference proceeding between Storck and one Charles Wesley Jean. The suggested claim read:

"In a copy-multiplying device, means for moistening the sheets to be printed comprising a roller having a non-absorbent surface, a moisture reservoir spaced therefrom and means for transfering moisture from said reservoir to said roller surface."

Before the parties were put in interference the suggested claim was amended by inserting in the third line after the word "means" and before the word "for," the words "comprising a wick"—counsel for Storck having stated before the amendment was made that the mooted claim was anticipated by the structure shown in the Thompson patent "unless the words 'means for transfering moisture from said reservoir to said roller surface' is construed to mean a wick and capillary action." This is the statement referred to by the District Judge in his opinion and because of which he held that the claims now under consideration should be limited to means operating by capillary attraction alone for transfering the liquid to the moistening roll for moistening the clear sheet. But the amendment of the suggested claim was less restricted than this and provided a wick, however it might operate in transfering the liquid to the moistening roll. The suggested claim, as thus amended, is not here in issue, and was not included in the claims of the reissue patent. Some claims were allowed in which the moistening agency was expressly limited to a transfer of liquid to the roll by capillary attraction, but that is not true of the claims here in question. In this situation the plaintiff is not estopped from having the benefit of the provisions of the claims specifying a "wick" or "fibrous material" as an agency for transfering liquid to the moistening roll without regard to the theory on which they may operate, for that depends largely upon how the agency is positioned, as to which the patentee is not limited in these claims. [5, 6] The District Court held all these wick or fibrous material claims valid and not anticipated. With this we are in entire accord. We are also of the opinion that these claims are not limited in the manner held by the District Court. It necessarily follows that the defendant infringes the positioning provisions of claims 32 and 34, their moistening provisions also being held valid. It also infringes all the other claims in issue containing the moistening elements of a "wick" or "fibrous material." The defendant in its device has the upper roll as its moistening roll, and the lower one for the feed roll under pressure, and uses a wick or fibrous material to transfer the liquid to the moistening roll.

The Commissioner's action in allowing an amendment to the specification and claim 3 of the original patent, so that in the reissue patent they would state more clearly the feature of the positioning of the clear sheet by the bight of the feed rolls, was proper, the specification and claim 3 of the original patent manifesting a clear intention to disclose and claim this feature of the invention, and show that the failure more clearly to state it in the original patent was due to inadvertence, accident or mistake. Stafford Co. v. Coldwell-Gildard Co., 1 Cir., 202 F. 744, at page 745; Northrop v. Draper Co., 1 Cir., 239 F. 719; Rev.Stat. Sec. 4916, 35 U.S.C.A. § 64.

The reissue patent is not invalid for laches in applying for it. It was applied for in much less than two years after the grant of the original patent. The amended claims are not broader than the original ones and the same is true of the new claims here in issue. Walker on Patent (Deller's Ed.), Secs. 324, 325.

On further examination of the evidence and the operation of the defendant's device (Exhibit 4), we are satisfied that the latter stops automatically when the platen or drum reaches the desired point for positioning the clear sheet by the bight of the feed rolls and infringes claim 3 of the patent in issue.

The decree of the District Court is affirmed as to claim 8; it is reversed as to claim 3 and also insofar as it limits the scope of claims 3, 19, 20, 21, 22, 29, 30, 32, 34 and 40; all the claims here in issue except claim 8 are valid; and claims 3, 19, 20, 21, 22, 29, 30, 32, 34 and 40 are infringed. The appellant recovers costs in this court and in the court below. The case is remanded to the District Court for further proceedings not inconsistent with this opinion.