## STANDARD MAILING MACHINES CO.
### v. DITTO, Inc.
#### No. 4331.

District Court, D. Massachusetts.

Dec. 27, 1940.

As Amended Jan. 28, 1941.

See, also, D.C., 35 F.Supp. 228.

Geo. P. Dike, Cedric W. Porter, and Geo. P. Towle, Jr. (of Dike, Calver & Gray), all of Boston, Mass., for plaintiff.

Irving U. Townsend, Jr. (of Emery, Booth, Townsend, Miller & Weidner), of Boston, Mass., and Max W. Zabel (of Zabel, Carlson & Wells), of Chicago, Ill., for defendant.

SWEENEY, District Judge.

The original action instituted by the plaintiff against the defendant was adjudicated in the Circuit Court of Appeals, and the decision on the question of infringement as covered in the original bill is reported in 1 Cir., 100 F.2d 466, under the same title.

The action is before me now on a supplemental bill filed by the plaintiff in which the question is raised whether certain other machines of the defendant, not in issue in the original action, infringe the plaintiff's patent.

The claims here in suit have all been held valid in the prior decision. The accounting under the original action has not yet been completed.

The supplemental bill and answer were referred to a master to "determine whether duplicating machines * * *" in evi-

dence before him (on the accounting) as "Exhibits M12 and M16 are infringements of each of (the) claims". His report is now before me, together with the objections thereto filed by both parties.

This action is limited to the question whether the defendant's machines, Exhibit M12 and Exhibit M16, infringe each of claims 3, 19, 21, 29, 30, 32, and 34, of the plaintiff's reissue patent (Storck), No. 19,951, dated April 28, 1936. There have been no objections filed to the master's finding of non-infringement of certain other claims in issue before the master.

The findings of fact contained in the master's report are adopted, and may be considered, as this court's findings of fact, subject to the modifications that appear hereinafter. Rule 53 (e) (2), 28 U.S.C.A. following section 723c.

The plaintiff's objections to the master's report are to that portion of it which holds that Exhibit M16 does not infringe claim 3. The defendant's objections go to the findings that M12 and M16 infringe other claims upon which the plaintiff here relies.

The claims will be treated as falling into three general classes. Claims 19 and 21 are moistening claims. Claim 3 is a feeding claim. Claims 29, 30, 32, and 34 are combinations of each.

### Claims 19 and 21

In the machine that was before the Circuit Court of Appeals in the original case the defendant's method of moistening its roll was held to infringe the moistening claims of the patent in issue. That court overruled the lower court's finding that the plaintiff's invention was limited to a wick and capillary attraction as a means for transferring moisture from a tank to a moistening roll. It stated that "the plaintiff is not estopped from having the benefit of the provisions of the claims specifying a 'wick' or 'fibrous material' as an agency for transferring liquid to the moistening roll without regard to the theory on which they may operate." In substance, the court held that the wick means as an agency for transfer was the essence of the invention, and the claims were not limited to capillary attraction, but covered a process where felt was used to impede the flow of water from a tank to the rolls.

The present machines of the defendant provide moisture to the damping roll by spraying liquid directly on top of the damping roll. As the damping roll turns counter-clockwise in contact with a piece of felt, the felt absorbs excess moisture from the damping roll, leaving on the roll a thin filament necessary to accomplish its work. The spray process operates during only one-sixth of a revolution of the drum on which the master copy is placed, and the moisture needed for the other five-sixths is obtained by the damping roll from the felt to which the damping roll had previously deposited its excess. The master has found, in substance, that this device infringes claims 19 and 21, in that the felt, provided in the defendant's device, operates as a wick. The mechanical facts in the case are not in dispute. The interpretation of the facts is in dispute.

The defendant objects to that portion of the master's report that includes a device which the defendant says in substance is a wiper, within the term wick as used in claims 19 and 21. To bring the defendant's machine within the terms of claims 19 and 21, it will be necessary to find that it uses a wick or fibrous material as an agency for transferring liquid.

Prior to the Storck patent, Pugh (patent No. 1,096,055) had disclosed a method of moistening the roll (in his device the moistening roll was the lower of two rolls rather than the upper) by immersing the roll in the moistening liquid, and then having whatever excess moisture was contained on the face of the roll wiped off by a piece of felt or other fibrous material, so that only a thin and even coating remained on the roll at the point of contact with the master sheet. This apparently was not a successful device because, when the roll was immersed in the liquid, there was an accumulation of liquid on the ends of the rolls, which, as the rolls rotated, seeped over all of its surface, and made the paper smudgy and blurry. The spray method adopted by the defendant does away with this objection to Pugh. Pugh's method of moistening is fairly illustrated by figure 8 of the Storck patent. The defendant claims that its device operates as a wiper, and approximates the Pugh invention rather than the plaintiff's. The Circuit Court of Appeals decision grants rather a wide invention to Storck insofar as his moistening means consists of a wick or other fibrous material as an agency for the transfer of the liquid, but its decision was limited to a device in which a wick or fibrous material was used as a means for transferring liquid to the feed roll.

The master finds specifically that the major portion of the liquid from the spray tube flows upon the adjacent surface of the moistening roll, and then is carried to the felt where again the major portion is absorbed and only a thin coating is left on the roll. He finds that the defendant's fibrous material is a wick in the sense that it receives and absorbs moisture, and applies that moisture to the surface of the moistening roll, but he overlooks the effect of receiving that moisture first from the damping roll. It can hardly be termed an agency for the transfer of the moisture to the roll, for the moisture is already on the roll before it strikes the felt. It is true that the felt absorbs excess moisture every time that the upper roll is sprayed and revolved against it, but, to my mind, it absorbs it more as a wiper, and cannot be considered to be an agency for the transfer of the moisture to the roll, as that language appears in the Circuit Court decision, or to be a "wick means for moistening", as it appears in the claims under consideration.

The necessity for presaturation of the defendant's felt before putting the machines into operation does not seem to me to be particularly significant or germane to the claims in question. It is well recognized that with certain materials absorption does not take place readily unless the material is dampened. The presaturation or priming has nothing to do with the inventions disclosed, and is merely a primary step to the use of the machine. Subsequent priming is unnecessary, except when the machine has paused for a period of time sufficient to allow the felt to become dry.

So much of the defendant's objections that go to the master's finding that the defendant's device infringes claims 19 and 21 are sustained. I find and rule that the defendant's Exhibits M12 and M16 do not infringe claims 19 and 21 of the Storck reissue patent.

## Claims 29, 30, 32, and 34 Insofar as They Refer to a Moistening Device.

In these claims the words "fibrous material" are used instead of the word "wick". The claims refer to the moisture supplying means as "a fibrous material * * * from which * * * the roller receives moisture". Limiting myself to the consideration of those claims, insofar as they refer to moisture and not to feeding, I am of the opinion that they add nothing to claims 19 and 21 beyond the substitution of fibrous material for a wick. The Circuit Court of Appeals in its prior decision treated these words as being in the same classification, and, in discussing the claims, referred to the fibrous material as the transfer agency. All that I have said with relation to the question of infringement of claims 19 and 21 is equally applicable to these claims. The defendant's objections to the master's report, insofar as it finds infringement of these claims as they may be limited to the moistening devices, are sustained. I rule that the defendant's device does not infringe claims 29, 30, 32, and 34 as to the moistening devices.

## Claim 3.

The feeding mechanism covered by claim 3 of the patent provides for "means for intermittently rotating such platen and feeding rolls in unison and to interrupt their movement while a clean sheet is positioned by and between the feeding rolls to be fed to and register with the master copy". Clearly, the plaintiff's invention described an operation of the platen and feeding rolls in unison with a method of interrupting this operation of both of them. The words "and to interrupt their movement" as used in the claims, mean to interrupt not only the feeding rolls but the platen as well.

The master's report deals extensively with the operation of two machines, and his findings of fact with relation thereto are adopted fully by the court as well as his conclusions as to infringement. Where the platen and feed rolls are operated in unison and interrupted in the same manner there is infringement. Thus, in the operation of the defendant's Exhibit M12, when the machine is operated by the trip bar, or when it is operated with the intermittent motion lever, there is infringement of the invention disclosed in the feeding mechanism of the plaintiff's patent. When, however, M12 goes into its third phase, and the drum or platen operates continuously without stop, then it gets away from the intermittent rotation of the platen and feeding rolls in unison and their subsequent interruption, and hence does not infringe.

I therefore rule that M12, because it is equipped (a) in its first phase with the trip bar, and (b) in its second phase with the termittent motion lever, does infringe claim 3.

Exhibit M16 is not provided with means to interrupt the rotation of the drum while a clear sheet is positioned by and between the feeding rolls. The drum continues to rotate after the feeding rolls have stopped, and with an experienced operator a continuous movement of the drums would not be unusual. The only method for interrupting the rotation of the drum is to interrupt the turning of the crank lever controlling the drum. This does not come within the wording of the claims in question. I accordingly rule that M16 does not infringe claim 3. The plaintiff's exception to the master's findings in this regard is overruled. .

### Claims 29 and 30.

I have previously ruled on the question of the infringement of these claims insofar as they are limited to moistening means. Because counsel in argument refer to these claims as combination feeding and moistening claims, I will dispose of the suggested infringement of the feeding means. As I read these claims they are not in the strict sense of the word combination claims. The principal feature of each of the claims is the moistening means, and the rest of the language in the claims seems to describe the usual elements present in any duplicating machine. These elements consist of a rotatable copy drum, a coacting pressure roller in combination with opposed rotative feed rollers with cooperative driving means for rotating said drum and feed rollers. The same descriptive language is used in a great many of the claims in the patent.

If the inventor intended to disclose feeding means in these claims his language is inadequate to accomplish such a purpose.

I therefore rule that the defendant's Exhibits M12 and M16 do not infringe claims 29 and 30.

### Claims 32 and 34.

These claims are to my mind real combination claims in that in addition to the moistening device they specify means for feeding and positioning. The master has properly found that M12 and M16 utilize the bight of the feed rolls under pressure to receive and position the end of each advance clear sheet, thus feeding and positioning in addition to moistening. Whereas the claims are not infringed by the moistening means of the defendant's machines, they are infringed by the defendant's feeding and positioning process. As a matter of fact, Exhibits M12 and M16 differ in no substantial degree from the infringing machine considered by the Circuit Court of Appeals in the original action.

I therefore rule that Exhibits M12 and M16 each infringe claims 32 and 34 of the plaintiff's patent insofar as these claims refer to positioning and feeding.

But infringement of some elements of a combination claim does not constitute infringement of the claim itself. See Hopkins on Patents, Vol. 1, § 275, and cases collected in the footnotes.

I therefore rule that claims 32 and 34 are not infringed since all of the elements contained in these claims are not used in the defendant's device.

The defendant's objections to the master's ruling on the question of laches and equitable estoppel and to his ruling excluding Exhibits MJ, MK, MM, and MN from evidence are overruled.

A decree may be prepared in accordance with the above.