STANDARD DUPLICATING MACHINES CO., Inc. v. AMERICAN BUSINESS MACHINES CORPORATION.

Civ. No. 7209.

District Court, D. Massachusetts.

May 18, 1948.

George P. Dike, Cedric W. Porter, George P. Towle, Jr., and Dike, Calver & Porter, all of Boston, Mass., for plaintiff.

Herbert P. Kenway and Kenway, Jenney, Witter & Hildreth, all of Boston, Mass., for defendant.

SWEENEY, District Judge.

This action was initiated by a complaint charging infringement of Letters Patent Re. No. 19,951, dated April 28, 1936, which were applied for by one Storck and assigned to the plaintiff. The phase of the case which is before me now is the defendant's motion to dismiss because of "plaintiff's failure to file a disclaimer of claims 7, 9, 12 and 15 in accordance with R.S. § 4917 and R.S. § 4922, 35 U.S.C.A. §§ 65 and 71, since claims 7, 9, 12 and 15 are not 'definitely distinguishable' from the subject matter of claim 8 which was disclaimed by plaintiff on January 31, 1939". The claims which are in issue in the present case are claims 19, 20, 21, 22, 29, 30, 32, 34 and 40. These claims have been held valid by this Court in prior litigation. See Standard Mailing Machines Co. v. Ditto, Inc., D.C., 22 F.Supp. 722; Id., 36 F.Supp. 221. In that action claim 8 was held invalid by this Court, and that holding was affirmed by the Circuit Court of Appeals in Standard Mailing Machines Co. v. Ditto, Inc., 1 Cir., 100 F.2d 466. A disclaimer of claim 8 was filed in the Patent Office by the plaintiff on January 31, 1939. No disclaimer of any other claim has been filed. It is to be noted that claims 7, 9, 12 and 15 have not been put in issue, nor have they been made the basis of any other suit insofar as the pleadings show. There has been unreasonable neglect or delay in entering a disclaimer of claims 7, 9, 12 and 15, unless those claims are definitely distinguishable from claim 8. Maytag Co. v. Hurley Mach. Co., 307 U.S. 243, 245, 59 S.Ct. 857, 83 L.Ed. 1264.

This problem is properly before me on motion. Bulldog Electric Products Co. v. Cole Electric Products Co., 2 Cir., 148 F.2d 792.

The purpose of the statutes which are set forth in 35 U.S.C.A., §§ 65, 71, is to protect both the patentee and the public. Where a monopoly has been granted by a patent to which the patentee discovers that he is not entirely entitled, he has the privilege of filing a disclaimer and narrowing his monopoly to that to which he is justly entitled. He thus avoids the old common law rule that, if one claim is invalid, the whole patent is invalid. See Ensten v. Simon, Ascher & Co., 282 U.S. 445, 51 S.Ct. 207, 75 L.Ed. 453. Where a claim has been held invalid, in filing his disclaimer the patentee is bound to disclaim all claims which are not clearly distinguishable from the invalid claim, or to put those claims which are in doubt in issue before some court. Claims 7, 9, 12 and 15 have not been disclaimed, and have not been put in issue in the present suit or in any other suit. We must therefore address ourselves to the narrow question whether such claims are clearly distinguishable from the invalid and disclaimed claim 8 of the patent.

In claim 8 there are two principal features: first, the intermittent rotation of the platen and feed rolls and, second, the means for moistening one of the said feed rolls as the paper passes between the feed rolls. In holding claim 8 invalid, this Court did so on the basis of the intermittent gearing, saying [22 F.Supp. 724], "The mere introduction of paper through the feed rolls was not new, and the claim that the paper was positioned 'by and between' the rolls, read in the light of the plaintiff's structure, means no more than introducing the copying paper into the bite of the feed rolls. This is accomplished while the feed rolls are stopped, and while the main drum holding the master sheet is still rotating. Such an accomplishment was brought about by the intermittent gearing of the master drum with the feed rolls.

Intermittent gearing was old and well known in the art, and had been used in alarms in clocks for many years prior to the plaintiff's invention. The result of the stopping of the feed rolls while the master drum was still in rotation through intermittent gearing was therefore not invention." It is to be noted that this Court made no finding on the second aspect of claim 8, namely, the moistening provision. On appeal, the Circuit Court sustained the holding of this Court and, in addition, held the claim invalid by reason of the moistening disclosure, stating as to this latter aspect that, [100 F.2d 467], "The claim is not sufficiently limited to escape the prior art". The question then arises whether the insufficient limitation referred to by the Court meant that the claim failed to designate the particular roll that was to be moistened, or did it mean that the claim failed to describe with sufficient detail the particular means by which the moisture was transferred from its reservoir to a feed roll? It could not have meant the former for, by designating the application of moisture to the upper roll, the claim would have read on Patent No. 1,645,930, issued to Ritzerfeld, dated October 18, 1927, and similarly on Patent No. 1,096,055, issued to Pugh, dated May 12, 1914, if it had designated the lower feed roll. It seems apparent that what the Circuit Court meant was the use of the words "means for applying", without qualification, such as by a reference to a wick or fibrous material being used as a conductor between the reservoir and the roller. This interpretation of the Circuit Court's language is strengthened by the fact that, in the same litigation, the moistening provisions of claims 19, 20, 21, 22, 29, 30, 34 and 40 were held valid when so qualified, though in none of them was there reference to which particular roll was to be moistened.

Claims 7 and 9 contain provisions parallel to those already quoted from claim 8. As to the intermittent rotative movement of the platen and feed rolls, claim 7 states, "* * * an intermittent gear adjustably secured to said printing platen to intermittently rotate it * * * means for rotating said feeding and moistening rolls in unison * * *"; and claim 9 states, "* * * an intermittent gear mounted on said shaft, a printing platen mounted on said shaft and adjustably secured to said intermittent gear * * * means for rotating said feeding and moistening means in unison with the printing platen * * *". The question here is whether the statement of claim 8 that the intermittent rotative movement of the platen is synchronized with the rotary movement of the feed rolls takes on a change of any significance, insofar as the Maytag rule is concerned, when, as in claim 7 and 9, there is instead a statement that the intermittent rotation of the platen is effected by an intermittent gear, and the statement is added that the intermittent gear is adjustably secured to the platen.

In calling for intermittent gearing, claims 7 and 9 clearly describe the same apparatus covered by the broad "means" clause of claim 8. In fact, this Court used specifically the words "intermittent gearing" in holding invalid claim 8 in the prior litigation, as quoted above, thus clearly indicating that merely narrowing the "means" phraseology of claim 8 to the words "intermittent gearing" would not make that aspect of the claim acceptable.

The addition of the statement that the intermittent gearing is adjustably secured to the platen, though it may be of some practical consequence in the results of the operation of the machine, is not a difference that will take claims 7 and 9 out from under the Maytag rule. I think its inclusion adds nothing of substance to claim 8 for purposes of the Maytag rule. Taking into consideration the entire specification, as was done in Duraloy Co. v. Carnegie-Illinois Steel Corp., D.C., 43 F.Supp. 291, there is no indication that the gearing was ever intended to be otherwise than "adjustably secured" to the platen, just as in the Duraloy case the court found no indication that the passage there in question was intended "to be otherwise than 'adjustably controlled' ".

As to moistening means, claim 7 states, "* * * means to convey moistening fluid to one of said rolls * * *", and claim 9 states, "* * * means for conveying moistening fluid to said moistening and feeding means * * *". Plaintiff

argues a distinction between the word "applying" of claim 8 and the words "convey" and "conveying" of claims 7 and 9, asserting that the word "applying" connotes direct contact between a feeding roll and the moistening fluid supply, while the words "convey" and "conveying" indicate that some device is interposed between the reservoir of fluid and the roll, to transfer fluid from the reservoir to the roll. Any technical distinction that may actually exist between the words is too abstruse to be of any significance within the meaning of the Maytag rule. For the purposes of that rule both words simply connote generally the phenomenon of fluid first being contained in a reservoir and then being deposited on the roll. They are equally undescriptive as to the particular means by which this process is accomplished. Furthermore, in the prior litigation this Court held that the moistening provisions of claims 19, 20, 21, 22, 29, 30, 34, and 40 were valid "in so far as they pertain either separately or in combination to the moistening provided solely by a wick and dampening roller as described in these claims". Standard Mailing Machines Co. v. Ditto, Inc., D.C., 22 F.Supp. 722, at page 725. In other words, those claims were valid because they went beyond using general words like "apply", "convey", "bring", "supply", etc., and specified with clarity the really novel aspect of plaintiff's moistening feature, i.e., the use of a wick or fibrous material between the reservoir of fluid and the roll to be moistened. And the Circuit Court said of claim 8's moistening provision that it was invalid because "* * * means for bringing a small amount of moistening fluid to the face of one of the rollers * * *" had been anticipated by the prior art. The words "means to bring" certainly connote the presence of an intermediary agency between the fluid reservoir and the roller as much as the word "convey"; yet the Circuit Court held that "means to bring" fluid to the roller covered an anticipated practice.

I therefore rule that claims 7 and 9 are not "definitely distinguishable" from claim 8.

The relevant provision of claim 12 is a moistening one, and reads, "* * * means for conveying moisture to the under side of the clear sheet of paper only when the said combined feeding and moistening rolls are rotated". Plaintiff argues that the designation in claim 12 of the under side of the clear sheet as the surface to be moistened makes claim 12 definitely distinguishable from claim 8. With this I cannot agree. I think a fair reading of claim 12 indicates that the moisture is supplied first to the lower roller and by the rotary movement of the two rollers is then applied to the under side of the clear sheet as it is fed through them. Nowhere in the patent specification is there any indication that the moisture in fact was to be supplied to the paper without first coating one of the rollers. It therefore follows that the moistening provisions of claims 8 and 12 are equivalents, for purposes of the Maytag rule, and claim 12 should have been disclaimed along with claim 8. In claim 8 the moisture is to be applied to the paper "as it passes between said pair of feed rolls". In claim 12 it is to be applied "only when the said combined feeding and moistening rolls are rotated". These are clearly two statements of the same thing.

Plaintiff claims that the designation of the under side of the clear sheet in claim 12 is a qualification of claim 8 which takes the problem out of the Maytag rule. While it may be true that moistening the under side of the sheet has important practical implications, insofar as the operation of the machine is concerned, that fact is of no consequence here. The prior decisions in this Court and in the Circuit Court indicated clearly that the objectionable feature of the moistening provision in claim 8 was the broad, general, ambiguous description of how the moisture reached the clear sheet. The provision was not held invalid because plaintiff omitted reference to which roller the moisture was first supplied, or to which side of the sheet it was applied when the rollers were rotated. The other moistening claims there litigated—19, 20, 21, 22, 29, 30, 34, and 40—were held valid, though they didn't designate which particular roller was to be moistened. The invalidating feature of claim 8 was the absence of any specific description of the means to be used to carry the fluid from its

reservoir to the roller to be moistened. Since that defect has not been corrected in claim 12, that claim remains indistinguishable from claim 8 under the Maytag rule.

I think that claim 15 is distinguishable from claim 8 read in the light of the prior art and the contribution that the use of the wick and capillary action made to it. As stated by this Court in Standard Mailing Machines Co. v. Ditto, Inc., D.C., 22 F. Supp. 722, at page 723, "What was needed was the application of moisture in a uniform and very slight degree". Into claim 15 can be read the use of the wick for furnishing uniformity in the distribution of a slight amount of moisture. This is much more specific than claim 8 which called for "means for applying a limited film of volatile moistening fluid. * * *".

From the foregoing I conclude and rule that the patent is void for failure to disclaim claims 7, 9, and 12.

The action is to be dismissed.