**BULLDOG ELECTRIC PRODUCTS CO. v. COLE ELECTRIC PRODUCTS CO., Inc., et al.**

No. 170.

Circuit Court of Appeals, Second Circuit.

April 17, 1945.

See, also, 59 F.Supp. 588.

Abraham J. Levin and Daniel G. Cullen, both of Detroit, Mich., and Dean, Fairbank & Hirsch and Morris Hirsch, all of New York City, for plaintiff.

Drury W. Cooper, Victor S. Beam, Thomas J. Byrne, and John N. Cooper, all of New York City, for appellee Westinghouse Electric & Mfg. Co.

Before EVANS and CHASE, Circuit Judges, and HINCKS, District Judge.

CHASE, Circuit Judge.

In this suit, brought in the District Court for the Eastern District of New York, the plaintiff alleged the infringement by the defendants of some of the claims of several patents it owned, among them being United States Patent No. 2,041,675 granted to Frank on May 19, 1936, for an "Electrical Distribution System." An order quashing the service of summons upon defendant Westinghouse Electric & Manufacturing Company was entered, but that was reversed on appeal to this court. Bulldog Electric Prod. Co. v. Cole Electric Prod. Co., 2 Cir., 134 F.2d 545. Then defendant Westinghouse moved for a summary judgment "holding Letters Patent of the United States in suit No. 2,041,675 (claim 13 of which has been disclaimed) invalid and void on the ground

that claims numbered 6, 7, 14 and 16 thereof are for the same purported invention as disclaimed claim number 13 thereof and that the failure to disclaim claims numbered 6, 7, 14 and 16 thereof renders the patent invalid as to all its claims * * *." It included in its motion two of the other patents in suit, but as to them its motion was denied and nothing in this appeal concerns the denial of that part of the motion. The motion was granted as to Patent No. 2,041,-675 and a summary judgment was entered holding it invalid and void and dismissing the complaint as to it. D.C., 50 F.Supp. 833. From that judgment the plaintiff has taken this appeal.

It has presented an interesting discussion of some of the present day difficulties faced by patentees, which it traces in part to what it says has been, and is, the unwarranted action of federal courts in adjudging patent claims invalid in suits for infringement instead of merely dismissing the complaint on the ground that invalid claims form no basis for a cause of action in an infringement suit. We are told in effect that in a private suit for infringement plaintiffs as a matter of law do, and so in practice should, risk only the loss of their suit and not the loss of their patent in whole or in part when they sue.' This plaintiff, moreover, suggesting that compared to the defendant it is a small and weak owner, has also argued that it was erroneously denied the right to show its relative business position in defense of the motion for summary judgment. This is on the theory that public interest requires that it be allowed to enforce its patent, notwithstanding its failure to disclaim as much as it should have done, in order to be able to combat some alleged illegal practices of the defendants tending to create and maintain a monopoly in distribution systems such as the patented one. The plaintiff insists that public policy demands that the settled rule as to the effect of the failure seasonably to disclaim all that has been unlawfully, but inadvertently, claimed in a patent should be varied as the business needs of particular plaintiffs vary in respect to monopolistic practices by particular defendants.

The material facts are quite simple. Before this suit was brought the plaintiff had sued Frank Adam Electric Company in the District Court for the Eastern District of Missouri for the infringement of some of the claims of certain patents. No. 2,041,-675 was one of those patents, and claims 12, 13 and 17 were relied on. No infringement of any of the claims was found and the conclusion was reached that claim 13 was invalid. The complaint was dismissed. Thereafter the plaintiff disclaimed claim 13 but no others and later brought this suit in which it relied on claims 1, 10, 11, 12 and 17 of this same patent.

The motion on which summary judgment for the defendant was granted was based on the failure of the plaintiff also to disclaim claims numbered 6, 7, 14 and 16 when it disclaimed 13 and on the contention that such failure made the entire patent void because claims 6, 7, 14, and 16 are not definitely distinguishable from 13 and there has been an unreasonable neglect or delay in disclaiming them.

This aspect of the appeal is controlled by Maytag Co. v. Hurley Machine Co., 307 U.S. 243, 59 S.Ct. 857, 83 L.Ed. 1264. Here, as there, a plaintiff having disclaimed in part has afterwards sued on other claims in the patent, and the failure to disclaim still another claim or claims has been held to invalidate the entire patent. We need not, and do not, look further for an authoritative exposition of the law on the subject. Decision as to the applicability of the Maytag case must turn wholly upon whether the trial judge was in error in concluding that claims 6, 7, 14 and 16 were essentially similar to 13. We do not think he was.

The patent specifications disclosed a particular type of the then well known electrical distribution system which made use of bus bars insulated at spaced intervals inside a duct run formed by two like halves made of sheet steel and joined together. These bus runs inside duct runs were made in sections of standard size which could be installed in factories or elsewhere in such over-all lengths as might be desired to serve merely as a well insulated conductor of electricity through the system or to distribute it at such number of points in the duct run as outlets could, and should, be installed for that purpose.

The patented duct run was made in sections, usually ten feet long, composed of two similar U-shaped members made of sheet metal which were joined together along external flanges. The bus bars were as long as the U-shaped members and the latter were fastened together at their flanges so

that the end of one extended beyond the end of the other at one end of the completed duct run. At the other end of the section the two halves of the duct run were in similar, though reversed, position. This made it possible to join two such sections with lap joints made of their own sides and it eliminated any need for using fish plates, sleeve couplers, or the like to stiffen the joints between sections.

Outlets were staggered. There were holes in the casing through which the plugs were inserted to make connection with the bus bars to draw from the supply of electricity there carried. By "staggered" it is meant that the holes in opposite sides of the casing were not directly opposite each other but were at least so spaced apart that the prongs of one plug would not interfere with those of another and would not touch the bus bars on directly opposite sides. There were also "spots" at intervals along the casing which could easily be broken through when additional outlets were to be put at such "longitudinally offset" openings.

Claim 13 read as follows:

"A sectional duct run comprising duct sections joined end to end and divided longitudinally into cooperating members, one of which overlaps the other at one end and underlaps the other at the other end, a group of bus runs in the duct run symmetrically and similarly disposed with respect to the opposed surfaces of the members, plug entrances on opposite sides of the duct, the entrances on one side being longitudinally offset from the entrances on the opposite side so that a bus run part exposed to one entrance is not exposed to the opposite side entrance."

Only the following claim 14, which was not disclaimed, need be quoted for present purposes. If it is not definitely distinguishable from claim 13, and we agree that it is not, it is unnecessary now to decide whether there are other claims in the same category which similarly ought to have been disclaimed. ·

Claim 14 reads:

"A sectional duct run comprising duct sections joined end to end and divided longitudinally to provide similar and complementary duct halves provided with external flange means for joining the halves longitudinally and for providing anchorages for the duct run, the duct halves being so arranged that one overlaps the other at one end and underlaps the other at the other end, the flanges providing means for joining neighboring duct sections in end to end relation, a group of bus runs in the duct run symmetrically and similarly disposed with respect to the meeting and joining lines of the duct halves."

As the trial judge observed, the apparent dissimilarities "appear to be verbal at best." Both of these claims call for the so-called scarf lap joint and bus runs symmetrically and similarly disposed in the duct run. These features, essentially alike in both claims, have no more cooperative relationship in claim 14 than in claim 13. The appellee seeks to distinguish claim 13 from the others by pointing out that it calls for staggered plug-in holes while the others do not, and from 14 particularly in that the latter covers duct halves provided with external flanges while nothing is said about flanges in 13. Despite the difference in the language, what each of the claims covers when read on the specifications in the patent is not definitely distinguishable from the coverage of the other. We think it obvious that they cover the same construction though the claims show minor differences in details which neither add to nor detract from what is claimed as the patentee's invention.

■ Such an issue as was here presented could have been raised by demurrer before the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, became effective. Richards v. Chase Elevator Co., 158 U.S. 299, 15 S.Ct. 831, 39 L.Ed. 991. Now relief may be granted upon motion, and a motion for summary judgment is proper when that relief is sought. Milcor Steel Co. v. George A. Fuller Co., 2 Cir., 122 F.2d 292, affirmed 316 U.S. 143, 62 S.Ct. 969, 86 L.Ed. 1332.

■ The appellant, without abandoning any other grounds for the reversal of the judgment, has candidly stated that it is more concerned with having the public interest adequately represented in patent litigation than with the fate of the particular patent in suit. It has therefore emphasized its position that in a suit for the infringement of patent claims which fails in whole or in part because at least one of the claims is shown to be invalid, the judgment or decree should be confined to an adjudication that the plaintiff has, pro tanto, no cause of action. We agree though we think the sub-

ject academic and decision likely to be of far less importance than appellant seems to think.

■■ The issue between the parties is whether or not the plaintiff is entitled to relief, and if it is not the bill should be dismissed. If the dismissal is in whole or in part because of the invalidity of one or more of the claims of a patent, it adds nothing to the legal effect of the decree to insert a clause in terms adjudging invalidity of those claims or of the patent if all its claims are held invalid. The judgment is a bar only to a later suit between the same parties or their privies on the same issues. Another party could be sued on the claim or claims previously held invalid. Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949; Maytag Co. v. Hurley Machine Co., supra. It does not seem to us to make much difference, as a practical matter, to a plaintiff who loses an infringement suit in whole or in part because of the invalidity of one or more of the claims of his patent, whether the decree itself shows that such was the ground of decision or whether that fact is revealed only by a further search of the record. Yet in a private suit of this kind the decree has no in rem effect upon patent claims as such and the decree in this suit should be modified by striking out clause 2 which purports to adjudge Patent No. 2,041,675 to be invalid and void.

■ We do not understand that appellant contends that the courts are powerless to dismiss the complaint in a suit for patent infringement on the ground of the invalidity of the claims or to reach decision as to their invalidity in the course of resolving all the issues actually presented in such a suit. And of course they are not, as cases too numerous to require citation amply show.

■ What might be called for want of a better name the other special defense of the plaintiff to the motion for partial summary judgment merits little discussion. It amounts to little, if anything, more than saying that the law pertaining to patents is to be construed and applied according to what may be shown and found to be needed to protect the public interest in each suit in the light of the relative competitive ability of the particular parties to that particular suit. We cannot subscribe to that notion. This plaintiff's patent, void as to others, is not valid as to the defendants because they may be guilty of the violation of anti-trust laws. The patent being void and unen-

forceable, no cause of action for its infringement will lie against anybody for the simple reason that all its claims are invalid; and without valid claims there is nothing to define the patentee's rights and nothing to be infringed.

Decree modified in accordance with this opinion and, as modified, affirmed with costs to the appellee.