## STANDARD DUPLICATING MACHINES CO., Inc. v. AMERICAN BUSINESS MACHINES CORPORATION.

### No. 4376.

United States Court of Appeals
First Circuit.

April 22, 1949.

Rehearing Denied May 19, 1949.

George P. Dike, of Boston, Mass. (George P. Towle, Jr., of Boston, Mass., on the brief), for appellant.

Herbert P. Kenway, of Boston, Mass. (Melvin R. Jenney and Kenway, Jenney, Witter & Hildreth, all of Boston Mass., on the brief), for appellee.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

The plaintiff-appellant, a Massachusetts corporation, brought the instant action in the court below for infringement of claims 19, 20, 21, 22, 29, 30, 32, 34, and 40 of United States Reissue Patent No. 19,951 for Apparatus for Duplicating Imprinted Matter which had been issued to it on April 28, 1936, sub. nom. Standard Mailing Machines Company, as the assignee of Frederick W. Storck. Seasonably after the complaint was filed the defendant-appellee filed a motion to dismiss, actually a motion for summary judgment under Rule 56(b), (c) Federal Rules of Civil Procedure, 28 U.S. C.A. on the ground that the patent in suit was "invalid on its face as to all its claims by reason of plaintiff's failure to file a disclaimer of claims 7, 9, 12 and 15" in accordance with 35 U.S.C.A. §§ 65, 71, since those claims were not "definitely distinguishable" from claim 8 which the plaintiff had disclaimed on January 31, 1939, following previous litigation in this circuit. The court below after hearing on the motion granted it on the ground that claim 8 was not definitely distinguishable from claims 7, 9, and 12, although it was from claim 15, and entered a final judgment dismissing the complaint. The plaintiff thereupon took this appeal.

The Storck Reissue Patent, supra, covers a wet process duplicating machine—a type of machine well known before Storck. What these machines were and how they operated, and Storck's contribution to the

art to which they appertain, are fully described in the opinions of this court and of the court below in previous litigation between the plaintiff, under its former name, Standard Mailing Machines Company, and Ditto, Inc., to which we shall later refer in some detail.

For present purposes it will suffice to say that machines of this type as their name implies are used to make copies of matter written or drawn on a master sheet, and use moisture in the process. The matter to be duplicated is first written, usually on a typewriter, on the master sheet, which, while it is being written upon, is backed with a sheet of special carbon paper having soluble ink placed with its inked surface in contact with the back of the master sheet, so that the matter written on the face of the master sheet is reproduced in reverse on its back. This master sheet is then fastened reverse side out around a cylinder or platen in the duplicating machine, and the sheet to be copied upon, first moistened slightly with a volatile fluid capable of dissolving the soluble ink deposited by the special carbon paper on the reverse of the master sheet, is pressed against the back of the master sheet. This pressure is achieved by revolving the cylinder or platen on which the master sheet is mounted and another cylinder or roller in co-axial contact with it and revolving in the opposite direction, and passing the sheet to be copied upon through the nip or bight of the rolls thus formed in registry with the master sheet.

Two major problems confront the designers of machines of the type described —the problem of moistening the sheet to be copied upon evenly and to the proper degree, and the problem of presenting that sheet to the platen and its associated pressure roller in proper registry with the master sheet. For if the copy sheet is too moist an excess of ink will be dissolved from the back of the master sheet with the result that only a few copies of it can be made and they will be blurred, and if too dry the copies will be faint, and if the copy sheet is unevenly moistened both defects will appear upon a single copy. And if the copy sheet is not in registry with the master sheet, the matter copied upon it will not be centered. Storck solved both of the

problems by presenting the sheets to be copied upon to the platen and its associated pressure roller through a pair of feed rollers one above the other. He used the lower of these rollers to moisten the copy sheet by placing the volatile moistening fluid in a tank underneath it, and drawing the fluid from the tank to the roller by the capillary action of a "wick or fibrous material" which incidentally also served to wipe or spread the moistening fluid evenly over the surface of the roller. He used the feed rollers to position the copy sheet by arranging for the intermittent rotation of the apparatus with reference to the hand crank with which it was operated. Thus as the hand crank of his machine is revolved continuously by the operator, the rollers, all of them, revolve intermittently, thereby permitting the operator of the machine to place the forward edge of the sheet to be copied upon in the nip of the feed rolls during their dwell period so that it will be picked up when they start to revolve again and fed to the platen at precisely the right moment to place it in registry with the master sheet.

We turn now to the previous litigation in this circuit to which we have already referred in passing.

In that litigation the plaintiff under its former name charged Ditto, Inc. with infringement of all of the claims of the Storck reissue patent now in issue plus claims 3 and 8. Following trial the court below found these last two claims invalid for lack of invention and the other claims (those now in issue) valid "in so far as they pertain either separately or in combination to the moistening provided solely by a wick and dampening roller as described in those claims", but not infringed. Standard Mailing Machines Co. v. Ditto, Inc., D. C., 22 F.Supp. 722, 725. On appeal this court affirmed in part and reversed in part. It affirmed the district court's conclusion that claim 8 was invalid, and it also affirmed the district court's conclusion that all the claims in issue then which are in issue now were valid. But it reversed as to claim 3, holding that claim valid, and it reversed on the issue of infringement, holding claim 3 as well as the rest of the claims in issue, except of course claim 8, infringed.

This court's previous conclusion with respect to the validity of claim 3 rested upon its coverage of the use of the feed rolls for positioning the copy sheet. For although feed rolls had been used in duplicating machines before Storck, and although they had also been used before him in such machines for moistening as well as for feeding, no one before Storck had used rollers to perform the combined functions not only of feeding and moistening, but also of positioning in the way covered by the claim, and therein this court held, lay its patentable novelty. The patentable novelty of the other claims, both this court and the court below concluded, lay in the fact that they covered moistening a feed roll by means of a wick or fibrous material operating by capillary action to transfer the volatile moistening fluid to the roll from a tank, typically by drawing the fluid by means of a wick up to the lower feed roll from a tank underneath it.

But with respect to claim 8, the one with which we are here primarily concerned, the court had this to say: "In claim 8 the main feature is the means for intermittently rotating the printing platen or drum in connection with means for rotating the feed rolls in unison with the drum and its pressure roll, for pressing the clear sheet against the master copy. We think that the District Court correctly held that claim 8 was invalid. Intermittent stopping and starting of feed rolls and master drum in unison for positioning a clear sheet to register with the master copy on the drum was old, as was also means for bringing a small amount of moistening fluid to the face of one of the rollers. Ritzerfeld Patent (1927) No. 1,645,930. Ritzerfeld discloses means for intermittent rotation of the feed rolls and drum in unison and means to bring a small amount of fluid to the face of one of the feed rolls. The claim is not sufficiently limited to escape the prior art." [1] Standard Mailing Machines Co. v. Ditto, 1 Cir., 100 F.2d 466, 467.

■ Promptly following the outcome of this litigation the plaintiff filed a disclaimer in the Patent Office as to claim 8 but no other. The defendant's contention is that the plaintiff's failure at the same time to disclaim claims 7, 9, 12 and 15 operates under the rule of Maytag Co. v. Hurley Mach. Co., 307 U.S. 243, 59 S.Ct. 857, 83 L.Ed. 1264, to invalidate its entire patent for the reason that the latter claims are not "definitely distinguishable" from disclaimed claim 8. And, as already appears, its contention prevailed in the court below except as to claim 15. In the view we take of the case it will only be necessary for us to compare disclaimed 8, with claim 7 because we agree with the court below that these two claims are not "definitely distinguishable", and under these circumstances we need not decide whether there are other claims in the same category with 7 which ought also to have been disclaimed. Bulldog Electric Prod. Co. v. Cole Electric Prod. Co., 2 Cir., 148 F.2d 792, 794.

Claim 8 is couched in general terms. It reads: "In a machine for producing duplicate copies of matter printed in reverse on a master sheet, a frame, a printing platen revolvably mounted in said frame, means for securing said master sheet to said printing platen, means for intermittently rotating said printing platen, a pair of feed rolls for feeding a clear sheet of paper, means for applying a limited film of volatile moistening fluid to the face of one of said feed rolls to be deposited on a clear sheet of paper as it passes between said pair of feed rolls, means for revolving said feed rolls in unison with the rotative movement of the printing platen and a pressure roll for pressing the clear sheet against the master copy."

Claim 7 is somewhat more specific in certain respects. It reads: "In a machine for producing duplicate copies of matter imprinted in reverse on a master sheet with copying ink, a stationary frame, a printing platen rotatably mounted in said stationary

---

[1] Ritzerfeld provided for the intermittent rotation of his feed rolls, but he did not use the nip of those rolls during their dwell period for positioning the copy sheet. Instead he provided for separating the rolls by a cam device during their dwell period and positioning the copy sheet by inserting it between the opened rolls far enough to bring its forward edge against adjustable stops within the machine provided for the purpose of positioning.

frame, an intermittent gear adjustably secured to said printing platen to intermittently rotate it, combined feeding and moistening rolls mounted in said stationary frame, means to convey moistening fluid to one of said rolls, means for rotating said feeding and moistening rolls in unison with said printing platen to feed a clear sheet to contact with a master sheet secured to said printing platen and means to press said clear sheet against the master sheet."

Disregarding as inconsequential minor changes in verbiage, such as the use of "imprinted" for "printed", the use of "rotatably" for "revolvably", and the use of "master sheet" for "master copy", and passing, also as inconsequential for present purposes the limitation of claim 7 over claim 8 that the printing on the back of the master sheet be "with copying ink" and the further limitation that the frame of the machine be "stationary", it appears that whereas claim 8 calls merely for "means for intermittently rotating said printing platen" claim 7 calls specifically for "an intermittent gear adjustably secured to said printing platen to intermittently rotate it", and whereas claim 8 calls for "means for applying a limited film of volatile moistening fluid to the face of one of said feed rolls", claim 7 calls for "means to convey moistening fluid to one of said rolls."

We confine our consideration to these two latter differences between the claims for the plaintiff contends that they alone make the claims "definitely distinguishable". Its argument is, first, that whereas claim 8 calls broadly for any mechanism for obtaining intermittent rotation of the rolls in unison, thereby covering the clutch used for that purpose by Ritzerfeld in the patent to him referred to in this court's previous opinion, claim 7 definitely specifies not only an intermittent gear to interrupt the revolution of the rolls, but also specifies that such gear be adjustable; and, second, that whereas claim 8 calls for means "for applying" moistening fluid to one of the feed rolls, claim 7 calls for means "to convey" such fluid to one of those rolls.

The plaintiff argues that this latter difference in wording, to consider its principal contention first, makes the claims "definitely distinguishable", for, referring to

Webster's New International Dictionary, it says: " 'Conveying' means to conduct, to transport, to cause to pass from one place to another or transmit. It thus implies translation, a change of position in space, a spaced or spacial relationship." Whereas, it says, " 'Applying' means 'to place in contact', and thus implies no spacing or spacial relationship." And the plaintiff says that this difference in terminology between the two claims was not accidental but purposeful for the Storck reissue patent covers two different moistening systems, the one we have described in which a wick, having its lower edge in the liquid and its upper edge in contact with the lower feed roll, is used to transport the moistening fluid by capillary action from the tank to the feed roll, and another in which the lower feed roll is immersed in the liquid in the tank underneath it and a piece of felt is used to wipe the surplus fluid off the roll. Therefore, the plaintiff's argument continues, in the light of Storck's disclosure, it is evident that Storck used the words "means for applying" in disclaimed 8 to cover his immersed roller-wiper moistening system, and the words "means to convey" in claim 7 to cover his wick moistening system, because, strictly speaking, " 'Applying' means that the moisture or liquid gets onto the surface of the roll by direct contact of the roll with the liquid in the tank," whereas " 'Conveying' means that the moisture is moved from one place to another by some interposed instrumentality; that it is transferred or transported from the reservoir to the roll by the wick."

The dictionary supports the distinction in meaning between "convey" and "apply" relied upon by the plaintiff. But the distinction is a narrow one at best for the word "apply" does not negative the idea of "a change of position in space." On the contrary, as meaning "to place in contact" it definitely implies a change in spacial relationship—a movement of something from some other place into "contact" with something else. Thus we commonly speak of "applying" a coat of paint with a brush although the concept of painting with a brush includes the concept of using the brush not only as "means for applying" the paint but also as the "means to convey" the paint

from the paint bucket to the surface upon which it is to be spread. Indeed Storck conceived of his wick as serving both to convey and to apply the moistening fluid to the roll in the sense of spreading it thereon in much the same way that a paint brush is used to spread paint, for in describing his wick in his specification he says: "The lower edge of the fibrous material is immersed in the fluid, its upper edge being supported so as to exert pressure in contacting with the roll, so that fluid conveyed upwardly by the fibrous material will be deposited on the roll, and further diffused by the surface attraction and tension of the roll face, and surplus moisture wiped by the fibrous material as the roll is rotated and thereby the limited moisture remaining on the roll is uniformly spread upon the duplicate sheet of paper as it is fed to the printing platen, by rotation of the rolls."

Moreover patents are not to be read with the attention focused solely upon an unabridged dictionary and an English grammar. The purpose of a patent is to disclose the invention described therein to the public, that is, to that part of the public skilled in the art to which the patent appertains, and hence they are to be read as those conversant with the art involved would read them. And so read the plaintiff's argument falls to the ground.

We say this because although Storck discloses both moistening systems referred to above (incidentally he accords very little space to description and discussion of his "wallower" roll-felt wiper system) he does not confine himself to the use of the word "convey" in describing his wick system. For instance he says that for his wick he prefers to use a closely compacted, degreased, wool felt which "feeds" the liquid slowly and spreads it very evenly upon the face of the dampening roller, and he speaks of the wick as "supplying" moisture, and again as "depositing" it upon the roller. From this use of synonyms one would not suppose that the patentee was using the word "convey" as a word of art to indicate his wick. In addition, and of greater importance, in the vast majority of his claims when Storck referred to a wick he either did so by name specifically, or else by description as "a strip of fibrous material having one edge immersed in said liquid solvent, its other edge resting upon the periphery of a moistening roll", or else when he used the phrase "means to convey" or "for conveying" moistening fluid he added "by capillary action" or "capillary attraction." From this use of language we have no doubt that when Storck meant a wick he not only knew how to say so, but said so, in unmistakable terms, and did not rely upon the general phrase "means to convey" to inform the reader that a wick was intended.

While we recognize that a lexicographical distinction exists between the words "convey" and "apply", the connotations of the words over-lap, and reading them in their context in the patent it seems to us that persons skilled in the art would not be able definitely to distinguish claim 7 from disclaimed 8 on the ground that "means to convey" in the former meant a wick and "means for applying" in the latter meant a wallower roll and wiper. On the contrary we think that one skilled in the art upon reading the entire patent would conclude that when the patentee meant a wick he said so definitely by name or by clear functional description. Hence we conclude that such a person would be in doubt as to whether the patentee meant a wick or not when he merely said "means to convey" without further elaboration.

We turn back now to the plaintiff's contention that the claims under consideration are definitely distinguishable on the ground that disclaimed 8 calls generally for "means for intermittently rotating said printing platen", whereas claim 7 calls specifically for "an intermittent gear adjustably secured to said printing platen to intermittently rotate it."

In Maytag Co. v. Hurley Mach. Co., 307 U.S. 243, 247, 59 S.Ct. 857, 859, 83 L.Ed. 1264, the Supreme Court said that the difference in verbiage between the claims it was considering "describes no difference in operation or result" and for this reason it concluded that those claims were not definitely distinguishable. Applying this test literally it seems to us clear that whatever means for intermittently rotating the printing platen might be employed,—an intermittent gear as called for in claim 7, or a clutch

as shown in Ritzerfeld, or any other appropriate device—the machine would be the same in operation and would produce the same result.

But the Supreme Court in the Maytag case was considering method claims and the words chosen are peculiarly appropriate to claims of that nature while here we have apparatus claims. Perhaps then instead of looking at the claims to see if their verbiage describes differences in operation or result we should look at them to see if their verbiage describes different structures. But looking at the claims from the point of view of structure we do not find them definitely distinguishable. For claim 7 does not cover a different structure from that covered by disclaimed 8. It merely covers one particular mechanical device or expedient, and that an old and well known one (interrupted gears) for building the structure broadly covered in claim 8, and by the disclaimer of that claim thrown into the public domain. In other words, claim 7, in the respect under consideration, merely points out a particular common expedient for building the structure covered by disclaimed 8. Under these circumstances we do not see how it can be said that the claims are definitely distinguishable from one another. Apex Electrical Mfg. Co. v. Maytag Co., 7 Cir., 122 F.2d 182, 189; Bulldog Electric Prod. Co. v. Cole Electric Prod. Co., 2 Cir., 148 F.2d 792, 794.

Nor does the fact that claim 7 calls for intermittent gearing which is adjustable, whereas disclaimed 8 is silent with respect to adjustability, make the claims definitely distinguishable. There is nothing anywhere in the patent to indicate that Storck intended his feeding-moistening-positioning rolls to be anything but adjustable with reference to the platen. Duraloy Co. v. Carnegie-Illinois Steel Corporation, D. C., 43 F.Supp. 291. Furthermore there is every reason to suppose that Storck intended his feed rolls to be adjustable with reference to the platen since he used the nip of those rolls for positioning the copy sheet, and without this feature of adjustability accurate positioning, which as we have seen is an essential element of all duplicating machines, could hardly be attained, or, once attained,

could hardly be maintained, due to inevitable wear of the mechanism.

Claim 7 not being definitely distinguishable from disclaimed claim 8, the plaintiff's failure either to disclaim claim 7 or to sue upon it within a reasonable time after the termination of the litigation in this circuit in which claim 8 was held invalid, operates under the rule of Maytag Co. v. Hurley Mach. Co., 307 U.S. 243, 59 S.Ct. 857, 83 L.Ed. 1264 to render its entire patent invalid.

The judgment of the District Court is affirmed.