238 F.2d 867
 The APEX ELECTRICAL MANUFACTURING COMPANY, Individually and as Trustee, Plaintiff-Appellant,
v.
ALTORFER BROS. COMPANY, Defendant-Appellee.
The APEX ELECTRICAL MANUFACTURING COMPANY and J. G. De Remer Research Corp., Plaintiffs-Appellants,
v.
ALTORFER BROS. COMPANY, Defendant-Appellee.
 No. 11443.
 No. 11444.
 United States Court of Appeals Seventh Circuit.
 November 26, 1956.
 
 COPYRIGHT MATERIAL OMITTED H. F. McNenny, Isidor Grossman, Rufus S. Day, Jr., F. O. Richey, D. W. Farrington, Cleveland, Ohio, William C. Nicol, Peoria, Ill., Richey, Watts, Edgerton & McNenny, Cleveland, Ohio, McAfee, Grossman, Taplin, Hanning, Newcomer & Hazlett, Cleveland, Ohio, Sours, Newell and Nicol, Peoria, Ill., for plaintiffs-appellants.
 Charles F. Meroni, Donald J. Simpson, Chicago, Ill., Eugene R. Johnson, Peoria, Ill., Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., Miller, Westervelt, Johnson & Thomason, Peoria, Ill., for defendant-appellee.
 Before DUFFY, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.
 DUFFY, Chief Judge.
 
 
 1
 These are two actions for alleged infringement of patents relating to domestic washing machines. Appeal No. 11443 involves two patents to James B. Kirby, to-wit: No. 1,969,176 issued August 7, 1934, and No. 2,105,218 issued January 11, 1938. The patents were issued to plaintiff, The Apex Electrical Manufacturing Company, as Trustee. The Trust Estate was set up by Kirby and his associates by a trust agreement.
 
 
 2
 Appeal No. 11444 likewise involves two patents: TePas patent No. 2,060,454 issued November 10, 1936, and is wholly owned by Apex, and Motycka patent No. 2,033,146 issued March 10, 1936. The legal title to this patent is in plaintiff J. G. De Remer Research Corporation, and plaintiff Apex is the exclusive licensee.
 
 
 3
 In Appeal No. 11443 plaintiff relied upon Claims 7, 20, 21, 22, 29 and 45 of Kirby patent No. 1,969,176, and upon Claims 2 and 6 of Kirby patent No. 2,105,218. In Appeal No. 11444 plaintiff relied upon Claims 1 and 2 of TePas patent No. 2,060,454, and upon Claims 15, 16 and 17 of Motycka patent No. 2,033,146.
 
 
 4
 In each suit defendant filed an answer asserting the usual defenses and also asserted counterclaims charging violation of the United States Anti-trust and Anti-monopoly laws. 15 U.S.C. §§ 1 and 2, c. 647, §§ 1 and 2, 26 Stat. 209. The District Court sustained every principal contention made by defendant except on a question as to title of the patents. More specifically the trial court found the claims in suit invalid over the prior art, invalid as being directed to an old combination or aggregation of prior elements; invalid because the claims in suit are vague and indefinite. The court also held that the claims in suit were not infringed; that Kirby patent No. 1,969,176 is invalid for failure by plaintiffs to file a statutory disclaimer; that plaintiffs misused their patents by the use of illegal covenants in restraint of trade, by block booking of patents, and by wrongful pooling and monopoly of patents contrary to the Anti-trust and Anti-monopoly laws. The court further awarded damages to defendant, the exact amount to be later determined, and also awarded costs and attorney fees.
 
 
 5
 Plaintiffs claim Kirby patent 176 disclosed and claimed two basic new results: 1) The automatic moving of clothes in a tub by a washing action into positions making possible centrifugal drying by rotation of the same tub, without handling the clothes or removing parts of the machine; and 2) Automatically separating loosened dirt and scum from the clothes before centrifugal drying by washing in an imperforate tub and overflowing the tub with water, while avoiding rotation of the tub which would return such dirt to the clothes by straining the water through them. The claims of this patent which are in suit are apparatus claims and are illustrated by Claims 7 and 20 appearing in the footnote.[1]
 
 
 6
 Plaintiffs claim the invention solved a long-standing problem in the art, and say that for more than twenty-six years inventors and others had failed to solve the problem of providing a machine which could complete the rotary operations automatically without manual handling and feeding of the clothes from one operation to the next, and without dismantling or changing the machine itself, but that all such efforts failed. Plaintiffs claim that more than two million machines embodying the invention of Kirby patent 176 have been purchased by the public.
 
 
 7
 The machine disclosed in Kirby patent 176 includes an upright tub, a bladed agitator extending up from the bottom of the tub and underlying the clothes, a power drive operable to oscillate the agitator without rotating the tub to wash the clothes and simultaneously balance them for extracting, and then operable to spin the tub to remove the water by centrifugal force without removing the agitator or handling the clothes, and a conduit to admit water to overflow the tub while the agitator is operating and the tub is stationary to separate loosened dirt and soap scum from the clothes.
 
 
 8
 Plaintiffs' witnesses explained that the agitator working through the bottom of the upright tub not only washes the clothes, but by oscillating in the water while the tub is not rotating automatically distributes the clothes by water currents into a substantially uniform ring or doughnut. Plaintiffs say this automatic uniform distribution of clothes is essential to a safe, successful spinning operation.
 
 
 9
 By moving a motor control so as to rotate the motor in the direction for washing, the tub is held against rotation while the blades of the agitator oscillate back and forth. The machine then goes through washing and rinsing cycles and finally the tub spins for a period of time to extract most of the water from the clothes.
 
 
 10
 Licenses under Kirby patent 176 were taken by the major companies in the washing machine field. Over one and a half million dollars were paid in royalties and settlements on machines which, plaintiffs claim, embodied the invention of Kirby patent 176.
 
 
 11
 Kirby patent No. 2,105,218 covers an improvement in the agitator and its drive for a washing machine, and which plaintiffs claim, eliminates "whip-lashing," and reduces wear and tear on the clothes. The motion created by the blades distributes the clothes circumferentially about the tub.
 
 
 12
 TePas patent No. 2,060,454 discloses and claims an improved safety control for a centrifugal extractor. Plaintiffs claim the arrangement provides complete safety by interrupting the power drive to the extractor whenever the lid is raised, without requiring the operator to manipulate any controls.
 
 
 13
 Motycka patent No. 2,033,146 covers a mounting for a centrifugal extractor which, plaintiffs claim, achieves the new result of eliminating both vibration and excessive gyration of the extractor during spinning.
 
 
 14
 The trial of these cases was protracted extending over a period of seven weeks. Qualified expert witnesses testified for both plaintiffs and defendant. Other witnesses gave oral testimony, and depositions of certain witnesses were received into evidence.
 
 
 15
 Infringement.
 
 
 16
 The court found that none of the claims in suit was infringed. In findings of fact 42 to 53, inclusive, the court gave in considerable detail its reasons for finding that defendant's "A-B-C" washing machines did not infringe the various claims. There was conflicting testimony before the court on the question of infringement, and as there is substantial evidence to sustain the trial court's findings thereon, and it appears to us that such findings were not clearly erroneous, we must sustain the trial court and hold that the claims in suit were not infringed.
 
 
 17
 Validity of Patents.
 
 
 18
 In many cases where non-infringement has been found, courts have determined there was no necessity of passing on the validity of the patents involved because to do so would, in effect, be determining a moot question. Aero Spark Plug Co., Inc. v. B. G. Corporation, 2 Cir., 130 F. 2d 290; Franklin v. Masonite Corporation, 2 Cir., 132 F.2d 800. However, we have before us the admonition of the Supreme Court that usually the better practice will be to pass upon the validity of the patent in suit. Sinclair & Carroll Co., Inc. v. Interchemical Corporation, 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644. Since that decision, Courts of Appeal have held that the suggestion of the Supreme Court in the Sinclair case "* * * was certainly not put in the form of a peremptory direction, but rather of a cautionary admonition, to be followed when that is the more convenient course; * * *" Harries v. Air King Products Co., Inc., 2 Cir., 183 F.2d 158, 162. In Grant Paper Box Co. v. Russell Box Co., 1 Cir., 151 F.2d 886, 890, the court said: " * * * In this logical dilemma the courts have wisely taken a practical course. They have decided cases of this sort, whenever they must be decided against the plaintiff, on whichever issue must be resolved against him, subject, however, to the qualification that sometimes, even when a patent is not infringed, it is proper to go further and in the public interest to declare a patent invalid if in discretion the circumstances presented make such a course seem appropriate." This court has decided questions of validity in spite of a determination of non-infringement in such cases as Powder Power Tool Corporation v. Powder Actuated Tool Company, Inc., 7 Cir., 230 F.2d 409, 415; Holland Co. v. American Steel Foundries, 7 Cir., 190 F.2d 37, 39.
 
 
 19
 Because of the public interest necessarily involved we think that in the instant case we should pass upon the questions raised by defendant that the patents are invalid because plaintiffs misused same in violation of the Anti-trust laws and also that Kirby patent No. 1,969,176 is invalid because of failure of plaintiffs to file a statutory disclaimer which failure, defendant claims, was a fraud upon the public. A further reason is that the trial court allowed damages to defendant and also awarded attorney's fees apparently based upon the alleged misuse and the failure to file a disclaimer.
 
 
 20
 In this Court defendant relies upon alleged misuse of patents and violation of the Anti-trust laws in two respects: 1) alleged block booking of patent licenses and 2) the Apex-Easy Spiral Agitator Licenses. It was the claim of defendant that when plaintiffs licensed most of the major manufacturers in the washing machine field, they adopted a program by which they conditioned the grant of a license under the basic patent, Kirby 1,969,176, on the taking of a license under two other patents of lesser scope.
 
 
 21
 We think there is no credible evidence in this record that plaintiffs would issue a license under its basic patent only by the acceptance by the licensee of licenses on unwanted patents.
 
 
 22
 Plaintiffs at first charged a minimum royalty of fifty cents which was later increased to sixty cents and for this royalty they were always willing to grant a license under one, two or three patents. The record discloses that the license to General Motors and to Maytag Company under the TePas patent were specifically requested by those companies. The license to Solar Corporation was granted under only one patent which, apparently, was all that was desired by that Company. General Electric Company sought and took a license under only two patents, and Nineteen Hundred Corporation first requested and then declined a license under two patents. There is positive testimony which is unchallenged, except by inference, that the number of patents to be included in any license was entirely optional with the licensee.
 
 
 23
 Defendant argues that in an unsigned, rough draft of a license forwarded to General Motors, there were three lines in blank which defendant now says proves that plaintiffs would not issue a license unless General Motors would take a license under at least three patents. This argument is a complete non sequitur. We hold that plaintiffs were not guilty of misuse of the patents in suit by block booking. See Hazeltine Research, Inc., v. Avco Manufacturing Corporation, 7 Cir., 227 F.2d 137.
 
 
 24
 Defendant's second argument on misuse refers to a license agreement dated September 11, 1941 by plaintiffs with Easy Washing Machine Corporation, with special reference to Articles 8 and 9 of that agreement. Apex and Easy had been involved in a series of lawsuits and the "multiple agreement" of September 11, 1941 was executed as a result of a settlement of these differences. One of the suits referred to in Article 3 as the "Michigan suit" involved Patent No. Re. 20,313 owned by Apex. This patent related to agitators and is not involved in either of the pending suits. The "Delaware suit" referred to in Article 1 involved Nelson patent No. 1,923,580 owned by Easy, also relating to agitators, which patent likewise is not involved in the suits at bar. The agreement provided for dismissal of these two suits, and in Articles 8 and 9 Apex and Easy granted to each other limited cross licenses on spiral bladed agitators under these two patents. The Apex-owned patent No. Re. 20,313 expired more than two years prior to the commencement of the actions now before the Court.
 
 
 25
 Article 8 of the agreement granted a license to Easy under No. Re. 20,313 to make washing machine agitators having a blade or blades winding spirally about the central axis of the agitator without reverse curves or oppositely facing cups, and in partial consideration for that license Easy agreed not to make or sell during the term of patent No. Re. 20,313 washing machine agitators having a blade winding spirally about the central axis of the agitator and having reverse curves or oppositely facing cups.
 
 
 26
 Under these Articles Apex was permitted to go on making its "Spiral dashers" and "Double dashers" without interference from Easy and obtained the right to extend the same immunity to its licensees. Similarly, Easy was permitted to make its "Spiralators" without interference by Apex. Each obtained freedom from duplication of its own patented designs by the other during the lives of the respective patents.
 
 
 27
 Defendant seeks to link the patents here in suit with the patent licensed in Articles 8 and 9 because Kirby patent No. 1,969,176 was included in a license granted by Apex to Easy in Articles 16 and 17 of the "multiple agreement", but the spiral agitator licenses described in Articles 8 and 9 and the license from Apex to Easy under Kirby patent No. 1,969,176 were wholly distinct and separate. The considerations described were entirely independent. The license to Easy to make a single tub machine under Article 16 was in consideration of the agreement of Easy to pay specified royalties as set forth in Article 17. The agreement by Easy not to make the forms of spiral agitators excluded from the license of Article 8 was not made in consideration of the license granted in Article 16 but was specifically defined "as being in partial consideration" of the licensing and sub-licensing rights granted to Easy on spiral agitators under Patent No. Re. 20,313. There was no provision for cancellation of the license of Article 16 by reason of any breach of agreement under Article 8. In fact, the language of the contract excludes any such right of cancellation.
 
 
 28
 Cross-licensing in itself is not unlawful. United States v. Line Material Co., 333 U.S. 287, 315, 68 S.Ct. 550, 92 L.Ed. 701, but if it be conceded arguendo that Articles 8 and 9 included an illegal restraint prior to December 1, 1948 when patent No. Re. 20,313 expired, or even thereafter, such provision did not taint the separate portion of the agreement pertaining to Kirby patent No. 1,969,176. If there ever was a defense of misuse because of this restrictive covenant, it was a defense against the patent misused. The provisions of Articles 8 and 9 of the "multiple agreement" are not relevant in the two suits now before us. Flexwood Co. v. Matt G. Faussner & Co., 7 Cir., 145 F.2d 528, 541.
 
 
 29
 We hold the trial court was in error in sustaining the defense of misuse because of the Apex-Easy agreement.
 
 
 30
 Defense of Disclaimer Against Patent No. 1,969,176.
 
 
 31
 The trial court sustained defendant's claim that Kirby patent No. 1,969,176 is invalid because of plaintiffs' failure to disclaim Claim 29. Defendant contends Claim 29 of patent 176 is the same as Claim 29 in Kirby patent No. Re. 18,280 which was held invalid in Apex Electrical Manufacturing Company v. Landers, Frary & Clark, D.C., 21 F.Supp. 241, affirmed 2 Cir., 100 F.2d 1009. Defendant points out that plaintiffs did disclaim Claim 29 in Kirby patent No. Re. 18,280, but did not disclaim Claim 29 in patent 176, and asserts patent 176 is, therefore, invalid, citing Marconi Wireless Telegraph Company of America v. United States, 320 U.S. 1, 57-59, 63 S.Ct. 1393, 87 L.Ed. 1731.
 
 
 32
 It must be acknowledged that much of the wording in Claim 29 of the Kirby patent No. Re. 18,280 is similar to that of Claim 29 of Kirby patent No. 176. Yet there is some significant differences in language. For instance, the hub of the extractor and the spin sleeve in Claim 29 in suit are neither disclosed nor claimed in No. Re. 18,280. Furthermore, it is fundamental that the claims of a patent should be interpreted in the light of the specification. Hunt v. Armour & Co., 7 Cir., 185 F.2d 722, 728; Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 217, 61 S.Ct. 235, 85 L.Ed. 132. When so interpreted the differences in the claims are evident.
 
 
 33
 R.S. 4922, 35 U.S.C.A.Appendix § 71, requires that retained claims must be "definitely distinguishable" from disclaimed claims, but that provision applies to disclaimed claims in the same patent. However, the trial court applied the rule to an entirely different patent.
 
 
 34
 In Bulldog Electric Products Co. v. Cole Electric Products Co., Inc., D.C., 50 F.Supp. 833, at page 835, modified in other respects and affirmed, 2 Cir., 148 F.2d 792, the District Court said: "* * * No claim of this patent has been held invalid, nor has any disclaimer been filed with respect to it. There is no authority cited which supports the assertion that because there is the same ownership of two or more patents, a disclaimer filed in one compels action in the other patent so owned. The rule of the Maytag case, Maytag Co. v. Hurley Machine Co., 307 U.S. 243, 59 S.Ct. 857, 83 L.Ed. 1264 certainly does not go to any such lengths, nor is there any provision in the patent statutes which compels such action. * * *"
 
 
 35
 Defendant argues that Marconi v. United States, 320 U.S. 1, 63 S.Ct. 1393, in effect nullifies the decision in the Bulldog Electric Products Company case. However, in Marconi a disclaimer had been filed in the patent there in suit but the court held it was filed too late to obtain the benefit of R.S. 4922. As stated heretofore, in the case at bar no disclaimer had been filed in patent No. 1,969,176.
 
 
 36
 The question of similarity or dissimilarity of Claim 29 in suit with Claim 29 in patent No. Re. 18,280 was before the patent office which allowed Claim 29 in suit. Plaintiffs had a right to rely upon the presumption of the validity of their patent. Prior to the decision in the instant case in the court below nothing had occurred to weaken or overthrow the presumption of validity. We hold Kirby patent No. 1,969,176 is not invalid for failure to disclaim Claim 29.
 
 
 37
 Damages and Attorney Fees.
 
 
 38
 The decree and judgment herein provided the defendant recover from plaintiffs damages adequate to compensate defendant for plaintiffs' misuse of patents in violation of the United States Anti-trust laws. As we have determined no such misuse is shown by this record, this portion of the judgment must be vacated and set aside.
 
 
 39
 The trial court awarded attorney's fees to defendant but gave no reason in its findings or elsewhere for so doing. In Laufenberg, Inc., v. Goldblatt Bros., Inc., 7 Cir., 187 F.2d 823, at page 825, we said: "* * * the trial court should make a specific finding to show the basis upon which the award of attorney's fees is made." This rule was adopted as a "sound one" in Pennsylvania Crusher Co. v. Bethlehem Steel Co., 3 Cir., 193 F.2d 445, 451. In Laufenberg we pointed out, 187 F.2d at page 825, that an award of attorney's fees is not the usual or customary procedure in a patent case, and that such an award does not follow as a matter of course from the decision of the suit as in the case of ordinary costs. See also Blanc v. Spartan Tool Co., 7 Cir., 178 F.2d 104, 105.
 
 
 40
 The basis for making an award of attorney's fees must be exceptional. Title 35 U.S.C. § 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." Such an award should not be made in an ordinary typical patent infringement suit. Continental Art Company, etc. v. Bertolozzi, etc., 7 Cir., 232 F.2d 131, 134. With the questions of misuse and failure to disclaim eliminated, there was nothing in plaintiffs' conduct that was unconscionable or inequitable. Wilson v. Seng, Co., 7 Cir., 194 F.2d 399, 404. The award of attorney's fees to defendant must be vacated.
 
 
 41
 That part of the judgment directing the complaint herein be dismissed at plaintiffs' costs is affirmed. That part of the judgment sustaining defendant's counterclaim and awarding damages and attorney's fees to defendant is reversed.
 
 
 42
 Affirmed in part, reversed in part, remanded for further proceedings in accordance with this opinion.
 
 
 
 Notes:
 
 
 [1]
 (7) In a combined washing machine and extractor, an upright tub whose side walls are substantially imperforate at their lower part, a conduit for introducing liquid into said tub for washing purposes and for floating the scum out of said tub, washing means located in said tub and operable independently of any movement of said tub, and means for rotating said tub to expel the liquid contents from its imperforate portion
 (20) In a combined washing and extracting machine, a liquid containing tub having its lower part substantially imperforate, a washing device in the bottom part of said tub, said device having parts which underlie the clothes, means for operating said washing device, and means operable without removing said washing device for revolving said tub at high speed to discharge the liquid therefrom.